UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-CR-20574-LENARD

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

AEY, INC., EFRAIM DIVEROLI,
DAVID PACKOUZ, ALEXANDER PODRIZKI,
and RALPH MERRILL,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Defendant Ralph Merrill's Motion to Suppress. **[DE 412]**. This matter was referred to the undersigned by the Honorable Joan A. Lenard, United States District Judge for the Southern District of Florida. **[DE 423**, **430**, **& 471]**. A hearing on these matters was held before the undersigned on December 9, 2009. The Court has considered the written and oral arguments, the testimony of witnesses, the applicable law, the court record, and is otherwise fully advised in the premises. For the reasons set forth below, Defendant Ralph Merrill's Motion **[DE 412]** should be **DENIED**.

The government presented testimony from Special Agent Luis Perez, of the Department of Defense Criminal Investigative Service ("DCIS"), and Special Agent Ferdinand Vazquez, of the U.S. Army Criminal Investigation Division, Major Procurement Fraud Unit. Defendant testified on his own behalf.

CASE NO.: 08-CR-20574-LENARD

**Brief Summary of Claims**

Defendant Ralph Merrill moves to suppress all statements made to the Government on May 7th and 8th, 2008, during an interview that took place at the United States Attorney's Office ("USAO"), pursuant to a federal grand jury subpoena relating to the investigation of Defendant AEY, Inc. Defendant Merrill argued that he was deceived into traveling to Miami for an interview with an Assistant United States Attorney ("AUSA"), under the guise that he was a fact witness in the Government's case against Defendant AEY and not himself a target of its investigation. In this connection, Defendant Merrill argues that the Government improperly used a grand jury subpoena to compel his appearance at an interview. Further, he claims that he was deceived by the promise of leniency into making certain statements that are inadmissible, not only because they were deceitfully obtained, but also because they were made in the context of plea negotiations. Thus, Defendant Merrill claims that the admissions he made on December 7th and 8th, 2008, were involuntary and inadmissible due to the Government's deceit, promises of leniency, and abuse of subpoena power.

**I.   Findings of Fact**

Defendant Merrill is the owner of Vector Arms, a weapons manufacturer, based out of Utah. On occasion, Defendant Merrill has held himself out as the Vice President of Defendant AEY, owned by Defendant Efraim Diveroli.

**A.   April 24, 2008 Interview**

On April 24, 2008, Special Agent Luis Perez and Special Agent Dave Berretts, both

CASE NO.: 08-CR-20574-LENARD

of DCIS, traveled to Vector Arms in Utah in connection with the investigation of Defendant AEY. After taking a tour of the plant, they spoke to Defendant Merrill about his relationship with Defendants AEY and Efraim Diveroli and the financing of arms contracts. Defendant Merrill spoke with the agents freely. At the conclusion of the interview, Defendant Merrill was served with two grand jury subpoenas for testimony and documents. Pursuant to the subpoenas, Defendant Merrill was to produce personal and corporate financial documents and appear before the grand jury to testify in Miami, Florida, on May 8, 2008. An Advice of Rights was not appended to the subpoenas. At the time, Defendant Merrill was not the target or subject of any investigation by the Government. According to Defendant Merrill, he was told that he was a fact witness for the government's investigation of Defendant AEY. Prior to his grand jury appearance, Defendant Merrill sought the advice of his attorney, Bradley Rich, Esq., concerning the two subpoenas.

### B. May 7, 2008 Interview

Defendant Merrill arrived in Miami on May 6, 2008. He was met at the airport by Special Agent Perez who transported him to a hotel. On May 7, 2008, Special Agent Perez picked up Defendant Merrill and transported him to the USAO. Defendant Merrill was taken to a conference room where he was met by AUSA James Koukios, Special Agent Perez, and Special Agent Dave Dietrich, of U.S. Immigration and Customs Enforcement. The purpose of the meeting was to review the documents that Defendant Merrill had brought in compliance with the subpoenas in preparation for the grand jury appearance the following day. After the review was completed, Defendant Merrill was

CASE NO.: 08-CR-20574-LENARD

asked about a couple of emails to Defendant AEY–one regarding the scraping off of information referencing the origin of certain arms, and the other about how to leverage pricing on the ammunition knowing it originated in China. At first, Defendant Merrill denied knowledge of the emails. When presented with copies of the emails, Defendant Merrill admitted to having authored them. At that point in the interview, AUSA Koukios advised Defendant Merrill that the conversation had reached a new level and that Defendant Merrill did not have to continue with the interview. Defendant Merrill was advised of his Fifth and Sixth Amendment rights and of the various options available to him under the law: Defendant Merrill could continue with the interview or end it; he could obtain or contact counsel; or he could cooperate in exchange for a deal. The interview was then concluded for a lunch break. Defendant Merrill was advised that he was not obligated to return after lunch.

Defendant Merrill chose to return to the interview after the lunch break, during which he chose not to consult with his attorney. According to Special Agent Perez, Defendant Merrill had many questions about the judicial process, in general, which were answered by AUSA Koukios. Although there were no formal charges against him at the time, Defendant Merrill claims that, during the interview, AUSA Koukios promised him a reduction of any charges that may be brought against him in the future to a Class A misdemeanor with probation, and that AUSA Koukios would recommend leniency to the judge at the time of sentencing in exchange for Defendant Merrill's full and ongoing cooperation in relation to the investigation of Defendant AEY and related matters, i.e. the

CASE NO.: 08-CR-20574-LENARD

investigation of Heinrich Thomet. The interview ended at approximately five o'clock. Defendant Merrill was taken back to the hotel.

### C. May 8, 2008 Interview

On May 8, 2008, Defendant Merrill called Special Agent Perez to advise that he did not want to testify in front of the grand jury and was returning to Utah. According to Defendant Merrill, he was told that he would only have to testify regarding the documents produced in response to the grand jury subpoenas and that the promise of leniency would not be available unless he testified. Defendant Merrill also discussed his concern about the duration of the process, because he had several other cases pending in Utah. Despite his concerns, Defendant Merrill continued with the interview from the day before, and then testified before the grand jury on May 8, 2008.

### D. Post-Grand Jury

A few weeks after his grand jury appearance, on June 6, 2008, Defendant Merrill was sent a plea agreement containing a felony charge.[1] Defendant Merrill had his attorney, Mr. Rich, review the plea agreement. He then signed it on June 12, 2008, and sent it to the USAO. According to Defendant Merrill, he rescinded the plea agreement the following day.

## II. Conclusions of Law

After conducting a thorough review of Defendant Merrill's arguments, the oral

---

[1] A second plea agreement was sent to Defendant on June 10, 2008. The only difference between the two plea agreements was in the loss amount designated therein.

CASE NO.: 08-CR-20574-LENARD

testimony, the record evidence, as well as the applicable legal principles, the undersigned concludes that Defendant Merrill's claims are without merit. None of the arguments advanced by Defendant Merrill support suppression of the statements elicited from his questioning on May 7th and 8th, 2008. Moreover, the evidence does not support a claim that the USAO abused its subpoena power in an effort to lure Defendant Merrill to Miami, Florida, or that Defendant Merrill was offered a specific plea deal.

### A. Statements made by Defendant Merrill on May 7th and 8th, 2008, were voluntary and were properly obtained by the Government.

Defendant Merrill argues that the admissions he made on May 7, 2008, were not voluntary because the AUSA induced same by promises of leniency.

The voluntariness of an admission is determined under the "totality of all the surrounding circumstances–both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). The pertinent issue in this determination is "whether the person's will to choose between remaining silent and making a statement is affected by any undue pressure." U.S. v. Grimes, 911 F.Supp. 1485, 1497-98 (M.D. Fla. 1996). As the Eleventh Circuit noted in United States v. Mendoza-Cecelia,

> The focus of the voluntariness inquiry is on whether the defendant was coerced by the government into making the statement: "The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception." Colorado v. Connelly, 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986) (citation omitted). The district court must consider the totality of the circumstances in assessing whether police conduct was "causally

CASE NO.: 08-CR-20574-LENARD

> related" to the confession. Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession. Isolated incidents of police deception and discussions of realistic penalties for cooperative and non-cooperative defendants are normally insufficient to preclude free choice.

963 F.2d 1467, 1475 (11th Cir.1992) (citations omitted). Thus, a voluntary confession is the product of a defendant's free and rational choice. Harris v. Dugger, 874 F.2d 756, 761 (11th Cir. 1989). An admission obtained "by any sort of threat or violence, or obtained by any direct or implied promises, or by the extension of any improper influence" is deemed involuntary. Id.; U.S. v. McKay, No. 09-CR13, 2009 WL 2151296, at *4 (M.D. Fla. Jul. 14, 2009).

The evidence suggests that Defendant Merrill's admissions preceded any supposed discussions of leniency. Moreover, according to the agents who were present at the interview, the discussions between AUSA Koukios and Defendant Merrill in this regard were general in terms. The evidence further suggests that, upon making certain admissions regarding the two emails, Defendant Merrill was advised immediately that the interview had reached another level and that he did not have to continue. In fact, prior to breaking for lunch, Defendant Merrill was advised of his constitutional rights and that he did not have to return. Nevertheless, Defendant Merrill chose to return to the interview and chose not to contact his attorney during the lunch break or at any point during the interview of his own free will.

There is no evidence that during the interview at the USAO Defendant Merrill was prevented from leaving. In fact, the testimony was that the door to the interview room was

CASE NO.: 08-CR-20574-LENARD

not locked; no one told Defendant Merrill that he could not leave; and at no time did Defendant Merrill indicate that he wished to terminate the interview.

Further, there is no evidence of any improper influence by the Government by way of deception. The evidence suggests that Defendant Merrill is a sophisticated businessman, who has retained counsel several times, and who has dealt with the judicial system in both civil and criminal capacities on numerous occasions. According to the testimony elicited at the hearing, as early as February 2008, Defendant Merrill had retained a criminal attorney, Bradley Rich, Esq. In fact, Defendant Merrill testified that, between April 24, 2008, the date when he was served with the grand jury subpoenas, and May 7, 2008, the date of his first interview at the USAO, he had discussed the grand jury subpoenas with Mr. Rich in Utah. He further testified that, upon consultation with Mr. Rich, he felt comfortable traveling to Miami and appearing before the grand jury without an attorney. Certainly, after consulting with counsel, Defendant Merrill cannot argue that he was duped by the Government into traveling to Miami.

Taking into account the totality of the circumstances in this case, it is clear that Defendant Merrill's statements were freely and voluntarily given. Defendant Merrill consulted with counsel prior to traveling to Miami to appear before the grand jury. The circumstances of the interview suggested that Defendant Merrill could leave at any point. He was advised that he did not have to continue the interview and that he had a right to counsel. Defendant Merrill chose not to communicate with his retained attorney and chose to continue with the interview.

CASE NO.: 08-CR-20574-LENARD

In short, the evidence simply does not support a finding that Defendant Merrill's statements on May 7th and 8th were involuntarily obtained. Accordingly, the undersigned finds that any statements made by Defendant Merrill on May 7th and 8th, 2008, were voluntary and, thus, should not be suppressed.

**B.    No plea negotiations took place on May 7th or 8th, 2008.**

Defendant Merrill argues that the discussions that took place on May 7, 2008, were in the nature of plea negotiations. Defendant Merrill testified that AUSA Koukios promised him a reduction to a misdemeanor with probation with respect to any charges that may be brought against him. His testimony is directly contradicted by Special Agent Perez who testified that all discussions regarding the judicial process were general in nature and that no specific promises were made to Defendant Merrill. According to Special Agent Perez, Defendant Merrill had many questions regarding the judicial process which were answered by AUSA Koukios who generally described cooperating versus going to trial. The discussion of these matters did not convert the interview into plea negotiations. At the time of the interview, there were no charges against Defendant Merrill. In fact, when the Government did send Defendant Merrill a plea agreement a few weeks after his grand jury appearance, it contained a felony charge. Defendant Merrill reviewed the plea agreement with his attorney, Mr. Rich, and executed it (although he testified that he rescinded it the next day).

In determining whether a discussion should be characterized as a plea negotiation, the court must consider the totality of the circumstances. U.S. v. Robertson, 582 F.2d

CASE NO.: 08-CR-20574-LENARD

1356, 1366 (5th Cir. 1978) (*en banc*). Pursuant to a two-tiered analysis, the court must determine, "first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances." Id.

Here, even if Defendant Merrill had a subjective expectation to negotiate a plea, such an expectation was not reasonable. At the time of the interview, there were no charges pending against him. He was free to end the interview or to consult with his attorney at any time. He chose to do neither despite having been advised of his rights. There is no indication that his decision was not freely made.

Furthermore, the undersigned finds the testimony of Special Agent Perez to be more credible in this regard than Defendant Merrill's testimony. When weighing the credibility of witnesses, the Court does not look at the status of the witness, but rather the Court must weigh the testimonies of all the witnesses, the consistencies or inconsistencies in their testimonies, their demeanor on the stand and the witnesses' interest in the outcome of the hearing. U.S. v. Ramirez-Chilel, 289 F.3d 744, 749-750 (11th Cir. 2002). Upon hearing the testimony of the witnesses in open court and assessing their demeanor, the undersigned finds that the testimony of Special Agents Perez and Vazquez was more credible than the testimony of Defendant Merrill.

As such, the undersigned finds that Defendant Merrill's statements should not be suppressed based upon the argument that the May 7th and 8th, 2008, interviews constituted plea negotiations.

CASE NO.: 08-CR-20574-LENARD

**Government's Use of Subpoena Power**

Defendant Merrill argues that the Government improperly used its subpoena power to compel his appearance at a private interview when it knew that Defendant Merrill was a possible target or subject of its investigation. Defendant Merrill arrived in Miami one day early, at the Government's behest, in order to have an interview prior to his grand jury appearance. There was testimony that AUSA Koukios became aware of the emails shortly before the May 7th interview. Defendant Merrill does not argue that failure to advise him of target status requires suppression of his admissions. Rather, he argues that the Government's willful disregard of its own policies was in furtherance of its plan to deceive Defendant Merrill into coming to Miami without a lawyer. However, there were no charges against Defendant Merrill when he arrived. Once Defendant Merrill was considered a target during the interview, the interrogation was stopped, and he was advised of his rights. As such, there is no evidence that the Government improperly used its subpoena power to improperly interview Defendant Merrill. The Government had Defendant Merrill arrive a day early in order to prepare him for his grand jury appearance. In this regard, the Government is allowed "considerable leeway" in preparing for a grand jury investigation. U.S. v. Elliott, 849 F.2d 554, 556 (11th Cir. 1988).

Accordingly, the undersigned finds that Defendant Merrill's statements on May 7th and 8th, 2008, should not be suppressed based upon the Government's misuse of subpoena power.

CASE NO.: 08-CR-20574-LENARD

### Recommendation

In light of the foregoing, it is the **RECOMMENDATION** of the undersigned that the Motion to Suppress Defendant Merrill's May 7th and 8th, 2008, statements to the Government **[DE 412]** be **DENIED**.

Pursuant to 28 U.S.C. §636(b)(1)(c), the parties may file written objections to this Report and Recommendation with the Honorable Joan A. Lenard, United States District Judge, within fourteen (14) days of receipt. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, this 30th day of December 2009.

_____
**WILLIAM C. TURNOFF**
**United States Magistrate Judge**

cc: Hon. Joan A. Lenard
    All Counsel of Record