**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 08-20574-CR-LENARD/TURNOFF

**UNITED STATES OF AMERICA**,

Plaintiff,

v.

**RALPH MERRILL**,

Defendant.
_________________________________/

**ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE (D.E. 512) AND DENYING DEFENDANT'S MOTION TO SUPPRESS (D.E. 412)**

**THIS CAUSE** is before the Court on the Report and Recommendation of Magistrate Judge William C. Turnoff ("Report," D.E. 512), issued on December 30, 2009, recommending denial of Defendant Ralph Merrill's ("Merrill") Motion to Suppress statements given to the Government on May 7-8, 2008, ("Motion," D.E. 412). Merrill filed objections to the Report ("Objections," D.E. 547), on January 19, 2010, to which the Government filed its response ("Response," D.E. 570), on January 26, 2010. Based upon a de novo review of the Report, Objections, Response, related pleadings, and the record, the Court finds as follows.

## I. Background[1]

In his Motion, Merrill moves to suppress statements made during an interview with the Government on May 7, 2008, and during his grand jury appearance on May 8, 2008. The interview took place at the United States Attorney's Office in Miami, Florida, pursuant to a federal grand jury subpoena relating to the investigation of Defendant AEY, Inc. ("AEY"). Merrill argues that he was deceived into traveling to Miami for an interview because he was under the impression that he was a fact witness in the Government's case against AEY, and not a target of the investigation. Merrill argues the Government used its grand jury subpoena power in order to compel his attendance at the interview and further its investigation. Merrill also asserts that his statements were made in response to promises of leniency and were in the context of plea negotiations.

### A. Magistrate Judge's Report

After conducting an evidentiary hearing on December 9, 2009, the Magistrate Judge issued his Report, recommending that Merrill's Motion be denied. Specifically, the Magistrate Judge found that: (1) Merrill's statements were freely and voluntarily given; (2) no plea negotiations took place during the interview; and (3) the Government did not abuse its subpoena power in order to further its investigation.

First, the Report concludes that, under the totality of circumstances, the evidence demonstrates that Merrill's admissions preceded any discussions of leniency. (Report at 7.)

---

[1] A more detailed discussion of the May 2008 interview, and the events leading up to it, is contained in the Report. (See Report at 2-5.)

Crediting the testimony of the agents present at the interview, the Magistrate Judge also found that any discussions of leniency were in "general" terms. Moreover, the Magistrate Judge found that, after Merrill admitted his involvement with the two e-mails discussing the possibility of leveraging the origin of the ammunition in negotiations and methods for cleaning the wooden crates,[2] the agents immediately advised him that the interview had reached "another level," and advised him he did not have to continue. Prior to breaking for lunch, the Government also advised Merrill of his constitutional rights and again informed him that he was free to leave. (Id. at 7.) The Magistrate Judge also relied upon testimony that the door to the interview room remained unlocked, Merrill was never instructed that he could not leave, and Merrill never expressed a desire to terminate the interview. (Id. at 7-8.) Examining the characteristics of the defendant, the Magistrate Judge further found Merrill to be a "sophisticated businessman, who has retained counsel several times, and who has dealt with the judicial system in both civil and criminal capacities on numerous occasions." (Id. at 8.)

Second, the Report concludes that no plea negotiations took place during the interview. (Id. at 9.) Specifically, the Magistrate Judge credited the testimony of Special Agent Luis Perez ("Perez") that all discussions regarding the judicial process were general in nature and rejected Merrill's testimony that Assistant United States Attorney James

---

[2] The first e-mail is a April 25, 2007, e-mail from Merrill to Efraim Diveroli and David Packouz, referencing attached photographs showing methods for "cleaning wooden crates." The second e-mail is a May 16, 2007, e-mail from Merrill regarding using the origin of the ammunition as leverage to negotiate a lower price.

Koukios ("Koukios") promised Merrill any future charges would be reduced to a misdemeanor with probation. (Id.) The Magistrate Judge noted that, at the time of the interview, no charges were pending against Merrill and the plea agreement that Merrill later executed (and rescinded) contained a felony charge. (Id.) Examining the totality of the circumstances and relying upon the testimony of the witnesses at the evidentiary hearing, the Magistrate Judge concluded that, assuming Merrill possessed a subjective expectation that he was engaged in plea negotiations, such expectation was objectively unreasonable. (Id. at 10.)

Finally, the Report concludes that there is no evidence that the Government improperly used its subpoena power to improperly induce Merrill to travel to Miami for an interview. (Id. at 11.) The Magistrate Judge found that no charges were pending against Merrill at the time of his interview and once he was considered a target, the Government stopped the interrogation and advised him of his rights. (Id.) Furthermore, the Magistrate Judge determined that the Government acted within its "considerable leeway" in having Merrill arrive a day early to prepare him for his grand jury appearance. (Id.)

### B. Merrill's Objections

Merrill objects to the Report's findings and conclusions--arguing, *inter alia*, the Magistrate Judge ignored specific Government promises made to solicit his cooperation, relied on incredible testimony that the Government did not consider Merrill a target until midway through the interview, ignored evidence in the record that the discussions were in

the context of plea negotiations, and fails to employ the proper legal analysis in determining whether plea negotiations occurred. (Objections at 2.)

First, Merrill argues the Magistrate Judge erred in its analysis of whether the statements were voluntary. According to Merrill, the evidence in the record indicates that his admissions, with the exception of his admission to authoring the two e-mails, came *after* he discussed cooperating and the prospect of leniency with Perez and Koukios. (Id. at 5.) Merrill also argues that the Magistrate Judge erred by characterizing him as a "sophisticated businessman," as his experience with the judicial system is limited to hiring counsel in relation to a "controversy over discharging firearms on Federal land," hiring counsel on behalf of an employee, and providing law enforcement with information about a public corruption case. (Id. at 5-6.)

Second, Merrill argues the Magistrate Judge erred in its analysis of whether the Government abused its subpoena power, as the testimony demonstrates the Government knew of the two-emails several days before Merrill's scheduled grand jury appearance. (Id. at 7.) Merrill contends the Government had to have considered Merrill a target given the nature of the allegations in the case and the content of the two e-mails.[3] (Id.)

---

[3] The Report notes that "Merrill does not argue that failure to advise him of target status requires suppression of his admissions." (Report at 11.) To the extent Merrill raises this issue in his Objections, (Objections at 1 (alleging Government "was well aware that Merrill was indeed a target and not a mere fact witness. Merrill's target status was concealed from him, however, until he was shown the e-mails").), it is unavailing as target warnings are "not constitutionally mandated" and even assuming the Government violated its own internal policy suppression would be unwarranted here. See United States v. Gillespie, 974 F.2d 796, 800 (7th Cir. 1992); see e.g., United States v. Myers, 123 F.3d 350, 355-56 (6th Cir. 1997).

Finally, Merrill argues the Magistrate Judge erred in its analysis of whether the interview statements took place in the context of plea negotiations. Merrill principally relies on Perez's testimony that the Government discussed "leniency" and "cooperation" with Merrill and the possibility of a Government recommendation of a downward departure at sentencing. (Id. at 10-11.) Merrill argues that the Magistrate Judge cited the proper legal framework set forth in United States v. Robertson, 582 F.2d 1356, 1366 (5th Cir. 1978),[4] but failed to apply the first prong, or examine whether Merrill exhibited a subjective expectation to negotiate a plea. (Id. at 11-12.) Merrill believes he exhibited a subject expectation to negotiate a plea and such expectation was reasonable.

**C. Government's Response**

In its Response, the Government first argues the Magistrate Judge correctly found the federal agents' testimony more credible than that of the defendant. Specifically, the Government cites to the Magistrate Judge's finding, "that the testimony of Special Agents Perez and Vazquez was more credible than the testimony of Defendant Merrill." (Response at 5 (citing Report at 10).) The Government argues these credibility findings are supported by the record, namely that Merrill claims he was promised a "Class A misdemeanor with probation," but could not recall what Class A misdemeanor was offered, Merrill later accepted (then rescinded) a plea offer to a felony, and the fact that Merrill claims the

---

[4] The Eleventh Circuit in Bonner v. City of Prichard, 661 F.2d 1206, 1207 (1981) (en banc), adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Government was both offering a "Class A misdemeanor with probation" and a downward departure recommendation *from probation*. (Id.)

The Government also argues that the Magistrate Judge's findings as to the voluntariness of his statements and the absence of plea negotiations are supported by evidence in the record that the Government was not in a position to negotiate a plea and took steps to advise Merrill once matters "reached a new level." (Id. at 3.) The Government argues the record supports the Magistrate Judge's findings in that, at the time of the interview, the Government had not yet charged Merrill with any crimes and was unsure of his role in the investigation. (Id. at 5-6.) As such, the Government was not in a position to negotiate a plea. The Government also argues Merrill's retention and consultation with counsel in Utah regarding the grand jury subpoenas, unbeknownst to the Government at the time, supports the conclusion that his statements were voluntary. (Id. at 3.)

Finally, the Government believes the Magistrate Judge correctly determined that there was no abuse of its subpoena power to further its investigation. The Government argues that this finding is supported by evidence in the record, including the fact that Merrill was called to testify as a records custodian for his company Vector Arms, that the beginning of the May 7th interview and the entirety of his grand jury appearance focused on the financial documents, and that once his concealment of authoring the two e-mails raised the Government's suspicion, AUSA Koukios stopped the interview and advised Merrill of his rights.

## II. Standard of Review

Upon receipt of the Report and the objections of the parties, the Court must now "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. In making its determination, the district court is given discretion and "is generally free to employ the magistrate judge's findings to the extent that it sees fit." Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1245 (11th Cir. 2007).

In considering the Report and the objections, the district court may adopt those findings to which there are no objections, make a de novo determination of those findings to which the parties object, and supplement the Report with any independent findings made by the court. See LoConte v. Dugger, 847 F.2d 745, 749-50 (11th Cir. 1988), cert denied, 488 U.S. 958 (1988) (describing three categories of findings for appellate review: (1) those findings accepted and adopted by the district court without objection by either party; (2) those findings of fact to which the parties object and the district court must make a de novo determination of; and (3) the independent findings of fact made by the district court). As the Eleventh Circuit explained in LoConte, "[w]henever any party files a timely and specific objection to a finding of fact by a magistrate, the district court has an obligation to conduct a de novo review of the record with respect to that factual issue. As the use of the phrase de novo implies, the district court's consideration of the factual issue must be independent and

based upon the record before the court." Id. at 750 (internal citation omitted). To the extent the magistrate judge's findings turn on evaluations of credibility or "demeanor-intensive fact finding," those findings should not be rejected or overruled lightly as "the raw transcript of the hearing" does not capture the "nuances of the testimony or the demeanor of the witnesses." Amlong, 500 F.3d at 1248-50. Thus, the Court adopts those findings of the Magistrate Judge to which neither Defendant nor the Government filed objections and proceeds to consider de novo those findings of fact for which there are objections.

**III. Discussion**

**A. Voluntariness**

In determining the voluntariness of an admission, the Court must assess "the totality of all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). A confession must be the product of a defendant's "free and rational" choice. Harris v. Dugger, 874 F.2d 756, 761 (11th Cir. 1989); Leon v. Wainwright, 734 F.2d 770, 772 (11th Cir. 1984).

The Court adopts the findings of the Magistrate Judge that Merrill's statements were voluntarily made and not the product of promises of leniency. First, the Magistrate Judge, after having the opportunity to view the demeanor of the witnesses, believed the agents' testimony that any discussion of leniency was "general" in nature. Second, the Magistrate Judge did not ignore any evidence of specific Government promises of leniency, but rather found Merrill's story incredible and contradicted by other evidence. The Magistrate Judge

also properly considered Merrill's sophistication as a businessman with experience dealing with attorneys and the criminal justice system. In fact, Merrill had himself retained counsel to discuss the grand jury subpoenas prior to traveling to Miami for his grand jury appearance. Nevertheless, once at the interview and upon being advised that matters "had reached a new level," Merrill still did not seek to invoke the protection of his retained counsel. Merrill also did not leave despite the door being unlocked and being told that he was free to leave at any point. Under the totality of the circumstances, the Magistrate Judge correctly determined that Merrill's statements were freely and voluntarily given, and not the product of any promises of leniency.

**B. Plea Negotiations**

In examining whether a defendant's statements should be characterized as part of a plea negotiation, the Court must examine "whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion" and "whether the accused's expectation was reasonable given the totality of the objective circumstances." Robertson, 582 F.2d at 1366. The Court must also again consider the "totality of the circumstances." Id.

The Court adopts the findings of the Magistrate Judge that Merrill's statements were not made in the context of plea negotiations with the Government. First, the Court must afford ample weight to the credibility determinations of the Magistrate Judge. The Magistrate Judge had the opportunity to hear testimony from Merrill, as well as Agents Perez

and Vazquez, and explicitly determined the agents' testimony to be more credible as to whether any promises of leniency were made. The Magistrate Judge determined, based on the testimony of Agent Perez, that all discussions regarding the judicial process were general in nature and that Merrill's questions were answered by AUSA Koukios's general description of cooperating versus going to trial.

Contrary to Merrill's Objections, the Report did not ignore the first prong of the Robertson analysis, but rather found that *assuming* Merrill exhibited an actual subjective expectation to negotiate a plea, there was no way he could demonstrate that such an expectation was reasonable. The Magistrate Judge's decision is supported by evidence in the record including: (1) at the time of the interview, no charges were pending against him; (2) he was free to end the interview or consult with his retained attorney at any time, but chose not to do so; and (3) Merrill later accepted a plea offer to a felony charge. (Report at 9-10.) Moreover, the Magistrate Judge did not err in finding the second prong of the Robertson test so lacking that he assumed the viability of the first prong for purposes of the analysis.

**C. Abuse of Subpoena Power**

The Government may not use the grand jury subpoena power to further its own investigative process. United States v. Elliott, 849 F.2d 554, 557 (11th Cir. 1988). Nevertheless, the Government is allowed "considerable leeway" in conducting its grand jury investigation. Id. at 556.

The Court adopts the findings of the Magistrate Judge. No evidence exists that the

Government improperly used its subpoena power to interview Merrill. The Government subpoenaed Merrill to testify as a records custodian regarding Vector Arms and his own financial records relating to AEY. Merrill consulted with an attorney regarding the grand jury subpoenas and decided to travel to Miami without his attorney. Additionally, the majority of the time spent with the Government was spent reviewing the financial documents produced in response to the subpoenas. The fact that the Government knew of the existence of the two e-mails several days before Merrill's scheduled grand jury appearance does not indicate the Government sought to compel his interview attendance despite the fact that he was a target. The agents testified that it was not until Merrill initially denied authoring the two e-mails, and subsequently admitted to authoring them, that the Government considered Merrill a target of the investigation. It was at this point that Merrill was advised of his rights and he decided to continue the interview. The record supports the Magistrate Judge's finding that the Government's subpoena power was not abused in order to further the investigation. Accordingly, it is **ORDERED AND ADJUDGED** that, consistent with this Order, the Report and Recommendation of the Magistrate Judge (D.E. 512) is **ADOPTED** and Merrill's Motion to Suppress (D.E. 412) is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 9th day of February, 2010.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**