<pre>
 1                UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA
 2                     MIAMI DIVISION
             CASE NO. 08-20574-CRIMINAL-LENARD
 3

 4   UNITED STATES OF AMERICA,        Miami, Florida

 5               Plaintiff,           September 17, 2010

 6         vs.                        9:08 a.m. to 1:00 p.m.

 7   RALPH MERRILL,

 8               Defendant.           Pages 1 to 39

 9   _____

10

11             NON-TESTIMONIAL EXCERPTS FROM THE
                         JURY TRIAL
12          BEFORE THE HONORABLE JOAN A. LENARD,
                 UNITED STATES DISTRICT JUDGE

13

14   APPEARANCES:

15

16   FOR THE GOVERNMENT:      ELOISA FERNANDEZ, ESQ.,
                              ADAM SCHWARTZ, ESQ., and
17                            FRANK TAMEN, ESQ.
                              ASSISTANT UNITED STATES ATTORNEYS
18                            99 Northeast Fourth Street
                              Miami, Florida 33132

19

20   FOR THE DEFENDANT:       PETER STIRBA, ESQ., and
                              NATHAN A. CRANE, ESQ.
21                            STIRBA & ASSOCIATES
                              215 South State Street, Suite 750
22                            Salt Lake City, Utah 84111

23   REPORTED BY:             LISA EDWARDS, CRR, RMR
                              Official Court Reporter
24                            400 North Miami Avenue
                              Twelfth Floor
25                            Miami, Florida 33128
                              (305) 523-5499
</pre>

```
 1            THE COURT:  Good morning.  You may be seated.

 2            United States of America versus Ralph Merrill, Case

 3    No. 08-20574.

 4            Counsel, state your appearances, please, for the

 5    record.

 6            You can be seated.

 7            MR. SCHWARTZ:  Good morning, your Honor.

 8            Adam Schwartz and Frank Tamen and Eloisa Fernandez on

 9    behalf of the United States.

10            THE COURT:  Good morning.

11            MR. STIRBA:  Peter Stirba and Nathan Crane on behalf

12    of Mr. Merrill.

13            And Mr. Merrill is present, your Honor.

14            THE COURT:  Good morning.

15            THE DEFENDANT:  Good morning.

16            MR. CRANE:  Good morning.

17            THE COURT:  I believe we're still waiting for jurors.

18    Is that correct?

19            THE COURT SECURITY OFFICER:  Yes.

20            THE COURT:  There are some issues regarding the

21    e-mails that I wanted to take up while we have the opportunity.

22            Mr. Packouz, could you step outside, please, sir.

23            (Thereupon, the witness retired from the courtroom

24    and the following proceedings were had:)

25            THE COURT:  I reviewed all of the e-mails last evening
```

1    that Mr. Tamen indicated that he intends to go forward with

2    today.  And I believe, first of all, that there are some that

3    may not be in evidence.  So I want to review those first.

4            Let me ask this question:  What's the Government's

5    position as far as Ylli Pinari and his status?

6            MR. TAMEN:  Judge, Ylli Pinari is an Albanian national

7    who is --

8            THE COURT:  I know who he is.

9            What is his status as far as the Government's theory

10   is concerned?

11           MR. TAMEN:  At some point, he learns that the

12   Government cannot buy Communist Chinese munitions.  He becomes

13   a co-conspirator because he is continuing to provide Chinese

14   ammunition and is aware that it's all being repackaged.

15           That would have been sometime in May after Alex

16   Podrizki goes to Albania and finds that there are Chinese

17   markings throughout the packaging.

18           THE COURT:  That would have been in May?

19           MR. TAMEN:  Yes.

20           THE COURT:  And what are the dates on EM 144 and 149,

21   please?

22           MR. TAMEN:  EM 144 is dated April 26th, and EM 149 is

23   dated April 27th.

24           THE COURT:  Okay.  So there are a number of e-mails

25   that Mr. Tamen indicated yesterday at the close of business

 1  that he intended to be going into today, and they are not in

 2  evidence.  That would be 144, 149, 163, 176, 178, 179, 198 and

 3  200.

 4          The second category is then there are some e-mails

 5  that were admitted into evidence, but they fall within the

 6  third category, which is third-party e-mails.

 7          First would be EM 13.  So 13, 48, 88, 90, 94 and 109.

 8  So let's take up 13.  That was also an e-mail that Mr. Stirba

 9  included in his memorandum.

10          On what basis does EM 13 come into evidence?

11          MR. TAMEN:  Judge, this is Category II.  In accordance

12  with the Court's ruling, that information provided to the

13  Defendant regarding available supplies goes to the knowledge

14  that the Defendant had of what could be provided at what price

15  from whom.

16          THE COURT:  Under what rule does it fall?

17          MR. TAMEN:  It's evidence that shows the Defendant's

18  knowledge.  It's relevant evidence because it's not hearsay.

19  It's information that was communicated to him to show that he

20  had the opportunity to find sources of munitions that were not

21  illegal.  So it goes to his criminal intent.

22          THE COURT:  Well, I know why you want to get it in,

23  the probative value, and I know it's relevant.  But it's an

24  out-of-court statement.

25          How does it come in?

```
 1              MR. TAMEN:  Because it's not being offered to prove

 2     the truth of the matter asserted.  It's being offered to show

 3     what information was available to the Defendant for him to

 4     choose to act upon it.

 5              Even if the sender of this e-mail never intended to

 6     fulfill that contract, the fact is the Defendant received this

 7     offer and chose not to follow up on it, chose not to seek out

 8     this particular source.

 9              THE COURT:  So your position is that it's not coming

10     in for the truth of the matter asserted?

11              MR. TAMEN:  That's correct.

12              It's coming in to show information that was provided

13     to the Defendant, which he chose not to act upon, because,

14     instead, he chose to act in violation of the law.

15              It also shows his participation in the bidding process

16     in obtaining prices for different types of munitions.  It shows

17     he was actively involved in the acts leading up to the

18     conspiracy.

19              It's basically inextricably intertwined, that he's

20     involved in the contract and the activities of AEY that went

21     toward getting the bid accepted by the Government.  The

22     suppliers are communicating with him as well as AEY.

23              THE COURT:  What's your position, Mr. Stirba?

24              MR. STIRBA:  Well, in addition to the memo, Judge, we

25     do think it's -- first of all, there is an issue of --
```

1          THE COURT:  Well, it's not clear to me what your

2   position is in the memo.  So I need you to state clearly your

3   position.

4          MR. STIRBA:  Absolutely.

5          The first problem is we have no evidence about who

6   Talon, Ltd., is or the purported sender, who is a gentleman

7   under the Regards portion of the e-mail.

8          There's nobody that can authenticate that this

9   actually came from anybody related to Talon, who that is, what

10  that is.  That's the first problem.

11         The second problem is it is hearsay, Judge, in our

12  view, and it does not appear to have any requisite foundational

13  predicate that would allow it to come in under any rule.

14         And, third --

15         THE COURT:  What is coming in for the truth of the

16  matter asserted in that e-mail?

17         MR. STIRBA:  That he is informing them of certain

18  price quotes, which are truthfully represented as being quotes

19  of the business, and attached to it are those quotes.  And,

20  obviously, they're being presented as evidence of the accuracy

21  of what Talon is offering at this time.

22         I couldn't see any reason how you would offer it if

23  those numbers and the quotes and the representations are not

24  salient.

25         The final thing I would say in terms of reliance, the

```
 1   reliance sort of analysis, based upon something that is
 2   otherwise maybe not hearsay because you rely on it:  The law
 3   says you have to rely on it and do something in reliance on it.
 4   The law does not say your failure to act is reliance on a
 5   document.  That's not the way it is.
 6        You have to actually do something in reliance on the
 7   information given.  And, apparently, that didn't happen because
 8   they never did this transaction.
 9        MR. TAMEN:  With regard to the question of who the
10   sender is, Mr. Packouz will testify that Shmuel Avivi was one
11   of the suppliers of munitions that AEY dealt with and that --
12        THE COURT:  Who?
13        MR. TAMEN:  The person where it says Regards.
14        THE COURT:  Oh, okay.  Shmuel Avivi.  Okay.
15        MR. TAMEN:  -- that he was one of the people that AEY
16   dealt with, that he was a supplier.  There was some discussion
17   about him.
18        So there will be testimony to further lay a foundation
19   for who this person is and what Talon, the company, involved
20   was and its relevance to their effort to obtain the bid from
21   the Army.
22        MR. STIRBA:  But under the DC court case, your Honor,
23   that's not really the foundation.  If you're presenting an
24   e-mail that has an address, there has to be some way to
25   authenticate that that address relates to some purported
```

1  sender.

2          We have no information and nobody knows and nobody can

3  testify as to this e-mail address, who it is, who's behind --

4          THE COURT:  Well, he just said Packouz is going to

5  testify as to the person identified in the e-mail as being a

6  supplier and connected with Talon, Limited.

7          MR. STIRBA:  Yeah.  And I don't think that's what is

8  required.

9          He has to show -- we're trying to figure out Talon,

10 Ltd., that address -- the e-mail address, is it linked in some

11 manner to a person and who that person may be.

12          Absent a foundation that you know of an account or an

13 e-mail address or there's some indication that is related in

14 some manner to somebody, we do not know who the purported

15 sender is and there's nothing to indicate that on the face of

16 the document other than to say there's a signature.

17          Nobody's going to testify as to the account.  It's

18 different than the other e-mails where there actually were

19 search warrants issued to Google.  They have related them to

20 certain addresses.

21          THE COURT:  Well, this was from the search warrant;

22 was it not?

23          MR. TAMEN:  Yes.

24          MR. STIRBA:  But the search warrant -- there's no

25 testimony and there's nothing that avers or allows what Talon,

1    Ltd. -- who that address is linked to.

2          The affidavit in support of the search warrant does

3    not say that.  It says it with respect to some other accounts,

4    but it doesn't say anything with respect to this account.

5          That's what the Court indicated in a DC case is at

6    least a threshold showing you have to make.

7          THE COURT:  Regarding EM 13, based upon the proffer by

8    the Government as to the testimony that they expect to elicit

9    from Packouz, with that information, which will then identify

10   Shmuel Avivi as the general manager of Talon, coupled with the

11   identifying information on the e-mail in EM 13, which includes

12   a "cc" to office@talon-sct.com, office@talon-sct.com, as well

13   as the e-mail which was sent to Efraim Diveroli and Ralph

14   Merrill, which I've previously found, based upon the evidence

15   in the record, is sufficient authentication, I find that

16   there's sufficient authentication for EM 13 and I find that it

17   is not coming in for the truth of the matter asserted.

18          And if you request, I will instruct the jury.

19          MR. STIRBA:  Your Honor, by the way, on a limiting

20   instruction, I believe we submitted something in writing this

21   morning, your Honor, that does relate to the photographic

22   e-mails.

23          Similarly, with respect to the matters that come in

24   for the purpose of -- not -- of the truth contained in the

25   document --

1          THE COURT:  Did you give a copy of this to the

2   Government?

3          MR. STIRBA:  Yes, we did, your Honor.

4          THE COURT:  Are these being filed on CM/ECF?

5          MR. CRANE:  Yes, Judge.  Just because we don't have

6   access, we send it to local Florida counsel to file that; and

7   he --

8          THE COURT:  Okay.  As long as they're being filed.  I

9   just wanted to make sure.

10         MR. STIRBA:  Yes, it is.

11         MR. CRANE:  Yes, your Honor.

12         THE COURT:  Okay.

13         MR. STIRBA:  And that just covers photographic.  I

14  think similarly, with respect to a matter such as this, if it's

15  not being introduced for the truth of the matter asserted, we

16  would ask for a limiting instruction with respect to those

17  e-mails as well.

18         THE COURT:  What's the Government's position?

19         MR. SCHWARTZ:  Your Honor, we would object to the

20  proposed instruction with respect to the photographs because it

21  specifically says that the photographs attached to the e-mail

22  exhibits are not being admitted for the truth of the matter

23  asserted.

24         In many instances -- for instance, an example is

25  EM 137, an e-mail sent by Ralph Merrill including different

```
 1    wooden crates with scraping tools.  The communicative aspect of
 2    that is being offered for the truth of the matter asserted.  So
 3    if they want to rephrase the language, that would be fine.
 4         But the communication aspects -- if the e-mail itself
 5    is being offered for the truth of the matter asserted through
 6    the Rules of Evidence as either a co-conspirator's statement or
 7    a statement of the Defendant, they are coming in for the truth
 8    of the matter asserted.
 9         I think the gist of their argument is -- what I think
10    they're really trying to say is, "We're not purporting that the
11    pictures are actually what was seen in Albania by the -- Alex
12    Podrizki on that day."
13         First of all, your Honor, through some foundational
14    testimony today, that may -- we might have met that burden.
15    Second of all, your Honor, I don't think it's really necessary
16    because we're not going to be at this time arguing at all about
17    that.
18         So if we can revisit this at the end, at jury
19    instruction might be the best time.  I don't think it's proper
20    now.
21         MR. STIRBA:  Judge, if I may, yesterday, I believe you
22    cited reference to an '85 Eleventh Circuit case with respect to
23    this precise issue.
24         I think the case said --
25         THE COURT:  Well, that was on authentication.
```

1          MR. STIRBA:  But I think that the language that the

2     Court read said that the photographs come in with the e-mail as

3     something that was attached to the e-mail only, that is, that

4     that's the purpose or that's the showing that's made.

5          I think that's all that case stands for.  It did not

6     go in to say then that the photographs, in a traditional sense,

7     are accurate and fair depictions of the contents of what is

8     purported in the photograph.

9          That's why we think a limiting instruction is

10    appropriate.

11         And I think that was the basis upon which the Court

12    allowed the admissibility.

13         THE COURT:  Well, when photographs are introduced, one

14    manner of introducing them is to present the photograph to the

15    witness and have the witness, pursuant to Rule 901,

16    authenticate the photograph as being a fair and accurate

17    depiction of what he or she saw at the time.

18         I have ruled that the photographs that are attached to

19    the e-mails have been sufficiently authenticated as being

20    the -- what the proponent seeks to introduce them as, as

21    photographs that were attached to e-mails, based upon the

22    testimony of Agent Mentavlos, the stipulation that was

23    introduced into the record and other evidence in the record,

24    that these are the photographs that were attached to the

25    e-mails.

1          Separate and apart from that, for instance -- 132 is

2    it, or what were you --

3          MR. SCHWARTZ:  137, your Honor, I believe.

4          THE COURT:  -- 137, which is the photographs that were

5    attached to the e-mail by Mr. Merrill about -- that at least

6    raises an information of here's a way to clean the crates

7    here with the photographs of the cleaning tools and the wooden

8    crates comes in as an admission.

9          Separate and apart from the authentication, there must

10   be an evidentiary ruling as to the photographs themselves.

11         MR. STIRBA:  And that I agree and I understand.

12         But with respect to the other photographs, that is,

13   the Albanian photographs and the Afghani photographs, that's

14   really what that limiting instruction goes to because there's

15   nobody who's going to testify that they were present in Albania

16   or present in Afghanistan and observed what, in fact, was

17   observed and that those photographs fairly and accurately

18   depict the condition at the time.

19         And so, while the foundational requisites --

20         THE COURT:  You'd have to direct me to specific

21   photographs that you're referring to.

22         MR. STIRBA:  I will.

23         THE COURT:  And Agent Mentavlos -- he was there when?

24   In August?

25         MR. SCHWARTZ:  October, your Honor.

1          THE COURT:  October.

2          He certainly testified as to viewing the crates and

3    the ammunition tins and the markings at that time.

4          MR. STIRBA:  You're right, Judge.

5          Let me give you the example, which would be EM 114,

6    which is an e-mail from Mr. Podrizki to Mr. Packouz.  And it's

7    attached.  There are five photographs.

8          THE COURT:  And the e-mail says, "Here are the

9    pictures.  The one with the green are the tracer rounds.  I

10   called Pinari, but he isn't answering."

11         And what's your argument there?

12         MR. STIRBA:  Those are -- those photographs were sent

13   by Podrizki, who was in Albania.  And the argument is that

14   there's no one presently, absent Podrizki, who can testify that

15   those photographs -- first of all, what they are of and,

16   secondly, that they fairly and accurately depict what they're

17   purporting to be depict.

18         THE COURT:  All right.  And I've ruled that they've

19   been properly authenticated based upon the rulings that I made

20   yesterday.  And these would be admissible urged 801(d)(2)(E),

21   statements made during and in furtherance of the conspiracy by

22   co-conspirators.

23         So I want to get started with the jury because we have

24   a limited amount of time with them today.

25         So those items that are not in evidence, Mr. Tamen, I

```
 1    take it you're not going to take up with the witness.  You had

 2    indicated that you were going to be reviewing those with the

 3    witness, but they're not in evidence.

 4          MR. TAMEN:  They're not in evidence.  If they were on

 5    my list, then, I will probably discuss them with the witness in

 6    order to lay a foundation for their admission.

 7          THE COURT:  Okay.  You may do that.

 8          MR. TAMEN:  Yes.

 9          THE COURT:  And there were some additional third-party

10    e-mails.  I'm not sure if they're on your list.  No.  They're

11    not.

12          So let me just give you a couple of rulings on some of

13    these particular e-mails so it's clear in the record.

14          13, as I've indicated, is not coming in for the truth

15    of the matter asserted and is properly authenticated under 901.

16          15, there's sufficient 901 authentication.  It comes

17    under 801(d)(2)(A).  And the *Safavian* -- I don't know how to

18    pronounce this case -- 435 F.Supp.2d 36 at -- 435 F.Supp.2d 36,

19    a 2006 decision by the United States District Court in the

20    District of Columbia, specifically addresses at Page 41 the

21    authentication of e-mails that are being forwarded to or by

22    others or with replies sent.

23          And based upon my findings of proper authentication, I

24    find that the forwarded e-mails, also -- the objections go more

25    to the weight that the jury should give the evidence than to
```

1   them not being admissible as not being properly authenticated.

2          And 15 would be admissible under 801(d)(2)(A).

3          EM 37 is admissible under 801(d)(2)(D), an agent

4   acting during the existence of the relationship and the scope

5   of the agency relationship, as would EM 46, EM 44, EM 51, which

6   also includes 801(d)(2)(A); EM 76, 801(d)(2)(D); 109, which is

7   referenced in Mr. Merrill's memo.

8          109 would be admissible under 801(d)(2)(E).  And this

9   applies to a number of the e-mails where there is an earlier

10  e-mail from someone, either Packouz or Podrizki or Diveroli or

11  Merrill, from AEY.  And then above that is a response from a

12  third-party supplier such as, here, Evdin.

13         Evdin alternatively could be considered an agent as

14  well.  So the bottom part of that particular e-mail would be

15  admissible under 801(d)(2)(D).  I find that the last e-mail in

16  the string of e-mails from Evdin, Limited, is not coming in for

17  the truth of the matter asserted.

18         MR. CRANE:  Judge, I'm sorry.  Which e-mail was that?

19         MR. STIRBA:  109.

20         THE COURT:  109.

21         EM 56, citing 801(d)(2)(A), adoption, and (B) -- well,

22  (B) is adoption and (A) is the party's own statement.  And the

23  attachment's not coming in for the truth of the matter

24  asserted.

25         95, 801(d)(2)(D); 114, 801(d)(2)(E) -- and that's with

1    photos -- as well as 115, 801(d)(2)(E); 117, 801(d)(2)(E); 118,

2    801(d)(2)(E); 116, 801(d)(2)(E).

3             119, 123, 142, 120, 126 are all admissible under

4    801(d)(2)(E).

5             128 is admissible under 801(d)(2)(E) and 801(d)(2)(B).

6             129, 133, 137, 136, 138, 141, 801(d)(2)(E).  Those are

7    all 801(d)(2)(E), as well as 146, as well as 148.  151,

8    801(d)(2)(A); 152, 801(d)(2)(E); 153, 801(d)(2)(A); 157,

9    801(d)(2)(E); as well as 166, 801(d)(2)(E); 167, 801(d)(2)(E);

10   175, 801(d)(2)(A).

11            180, 192 and 195, all 801(d)(2)(E).

12            And a number of the other e-mails that I did not make

13   specific citations this morning would fall within the

14   categories that I cited to you yesterday when -- as to the

15   various categories, either an admission by the Defendant, a

16   co-conspirator's statement under 801(d)(2)(E) or not coming in

17   for the truth of the matter asserted.

18            We'll have to take up the remaining issues regarding

19   the e-mails that are not in evidence, since -- many of which I

20   think are included in the tables that were submitted by

21   Mr. Merrill.

22            Let me just give you some rulings in regard to the

23   tables that I can give you on what was submitted by

24   Mr. Merrill.

25            EM 20 comes in under 801(d)(2)(D).  This is a

1    forwarded letter.  So it would actually be both (B) and (D).

2    It's a statement by an agent and the forwarding of the letter

3    becomes the adoption.  The attachment's not coming in for the

4    truth of the matter asserted.

5         EM 21 is also a forwarded message.  It comes in under

6    801(d)(2)(B) and (D).  And the attachment is not coming in for

7    the truth of the matter asserted.

8         EM 41, in which it's titled "First Quote," with an

9    attached quote from Talon.  The -- the quote's not coming in

10   for the truth of the matter asserted, but the -- this is not

11   coming in for the truth of the matter asserted -- this is an

12   e-mail from AEY, Inc., to Ralph Merrill -- but, rather, to

13   demonstrate his relationship with the parties and its

14   involvement in the preparation of the contract.

15        EM 46 comes in under 801(d)(2)(D), and the attachment

16   also comes in under 802(d)(2)(D).

17        EM 47 comes in under 801(d)(2)(B) and (A), as it's a

18   forwarded quotation.  It's adopted under (B).

19        EM 102 comes in under 801(d)(2)(D).

20        EM 126 comes in under 801(d)(2)(E).

21        EM 128, 801(d)(2)(B) and (E).

22        EM 129, 801(d)(2)(B) and (E).

23        EM 131, 801(d)(2)(E).

24        EM 133, 801(d)(2)(E).

25        The remaining e-mails, which -- are some of the

```
 1    e-mails that I've identified that we need -- still need to take

 2    up.

 3              Okay.  Let's bring in the jury.

 4              (Whereupon, certain proceedings transpired which have

 5    not been requested transcribed, after which the following

 6    proceedings were held:)

 7              THE COURT:  You may be seated.

 8              How is -- how does the Government intend to proceed

 9    concerning the e-mail exhibits that I cited to you this

10    morning?

11              I know for some of them that Mr. Tamen had

12    indicated -- that he indicated yesterday he was going to be

13    reviewing with the witness and I indicated that they were not

14    in evidence and he said he was going to seek to lay the

15    foundation and move to admit them into evidence.  And that's

16    fine.

17              And then there were some other exhibits.  We took care

18    of 13, which is one of the exhibits that he reviewed.  There

19    was 48, 88, 90, 94 and 109, which I believe come out of the two

20    tables in the pleading.  I don't have a docket entry number.

21    At least some of them are included in the tables in the

22    pleading that Mr. Stirba submitted to the Court yesterday.

23              And then there's some additional -- okay.  They're

24    from Table 1.  And there are additional e-mails on the second

25    table, which would be 127, 132 -- these are all EM numbers --
```

1    134 and 205.

2          How are you going to proceed regarding the

3    admissibility of those e-mails?  Do you want to have a chance

4    to review them and then make your arguments to me?  Do you want

5    to take them up now?

6          MR. SCHWARTZ:  Yes, your Honor.  If we could have just

7    a few minutes.

8          THE COURT:  All right.  So let's take about -- will

9    ten minutes be enough time?

10          MR. SCHWARTZ:  That'd be fine, your Honor.

11          THE COURT:  We'll take a ten-minute recess.

12          (Thereupon a recess was taken, after which the

13    following proceedings were had:)

14          THE COURT:  We're back on United States of America

15    versus Ralph Merrill, Case No. 08-20574.

16          Counsel, state your appearances, please, for the

17    record.

18          MR. SCHWARTZ:  Good afternoon, your Honor.

19          Adam Schwartz, Eloisa Fernandez and Frank Tamen on

20    behalf of the United States.

21          MR. STIRBA:  Good afternoon, your Honor.

22          Peter Stirba and Nathan Crane on behalf of

23    Mr. Merrill.

24          And Mr. Merrill is present.

25          THE COURT:  You may be seated.

```
 1              And, actually, I have two more e-mails, 18 and 125,
 2   from the tables in Mr. Merrill's pleading.
 3              How do you want to proceed, Mr. Schwartz?
 4              MR. SCHWARTZ:  We could just go one by one, your
 5   Honor.
 6              THE COURT:  So we're going to start with 48?
 7              MR. SCHWARTZ:  Yes, your Honor.
 8              THE COURT:  Can you bring that up?
 9              MR. SCHWARTZ:  It's right up on the screen.
10              THE COURT:  Okay.
11              MR. SCHWARTZ:  Your Honor, our basis for admissibility
12   would be the same as for Exhibit 13 that we discussed prior to
13   trial today, especially through the testimony of -- this is not
14   brought in for the truth of the matter asserted.
15              It's just showing Merrill's involvement in procuring
16   different sources of -- during the -- either the solicitation
17   portion or the early portions of the performance of the
18   contract.  This is in February of 2007.  So we believe this
19   falls under the inextricably intertwined.
20              The e-mail itself is properly authenticated based upon
21   the "From" and, also, the signature, coupled with the testimony
22   of David Packouz as to who Talon was.
23              THE COURT:  Can I see the attachment, please?
24              MR. SCHWARTZ:  Yes, your Honor.
25              THE COURT:  Mr. Stirba?
```

1          MR. STIRBA:  Yes, your Honor.

2          The document that is attached is indeed hearsay.  And

3     that's the basis --

4          THE COURT:  Can you move the microphone towards you,

5     please.

6          MR. STIRBA:  Yes.  I'm sorry.

7          The document attached, we believe, is hearsay, your

8     Honor.  It's a letter from another party who's not going to

9     testify, to Mr. Diveroli.  Never went to Mr. Merrill.

10          And even though there is an authentication e-mail

11     address on the e-mail, I think it's inappropriate, in our view,

12     to allow the extraneous document to come into evidence.

13          THE COURT:  I'm going to overrule the objection.

14          I find that, based upon the evidence in the record,

15     that the e-mail itself has been properly authenticated pursuant

16     to Rule 901 and that the substance of the e-mail and the

17     attachment further goes to substantiate and authenticate the

18     e-mail coming from Talon Security.

19          There's already been testimony in the record regarding

20     Talon and their relationship with AEY and the Defendant.  And

21     the attachment itself is not coming in for the truth of the

22     matter asserted and, therefore, is not hearsay.

23          Next is 88.

24          MR. SCHWARTZ:  Your Honor, for this e-mail -- and I

25     think the same analysis we're going to apply as well to, I

1    believe, 89 and 109 -- there's two theories of admissibility,

2    your Honor.

3           Well, first of all, the e-mail itself, I believe, has

4    been properly authenticated based upon the testimony of David

5    Packouz with respect to the -- who is Evdin, who is sending the

6    e-mail, and that this is, in fact, an e-mail.  So I believe

7    we've crossed that hurdle.

8           So the only other issue is the basis for

9    admissibility.

10          Your Honor, we believe that this would be admissible

11   as nonhearsay under 801(d)(2)(D) as a statement of a party's

12   agent, based upon the testimony of David Packouz that Henri

13   Thomet and Evdin was a long-time supplier of Ralph Merrill, and

14   the discussions here are regarding their business relationship

15   with -- and respect to answering.  I believe, if you go to the

16   bottom of this e-mail in particular, it's in response to issues

17   that Ralph Merrill raises.

18          Second, your Honor, that's our -- we believe that's

19   how it's best to be admissible.  This is also relating to the

20   contract between AEY and Evdin.

21          THE COURT:  Mr. Stirba?

22          MR. STIRBA:  Yes, your Honor.  Thank you.

23          I'd be somewhat repeating myself, but we don't believe

24   *Safavian* allows for, essentially, the admissibility of

25   documents such as this without adequate authentication of the

 1   e-mail.  There's been no testimony about that particular

 2   address, who that is, who's sending it.

 3         Furthermore, the attachment -- we don't even know who

 4   created it.  We don't know when it was created.  We don't know

 5   anything about it, quite frankly, other than it says "Seller:

 6   MEICO" and some other language, "Buyer:  Evdin."  So it's

 7   hearsay and should not be admitted.

 8         THE COURT:  I'm going to overrule the objection.  I

 9   find that there's proper authentication pursuant to 901 for the

10   admission of the e-mail, which begins with an original e-mail

11   from Wednesday, April 11th, 2007, from Ralph Merrill.

12         There has been identification through the testimony of

13   Packouz of who Evdin was, and he identified Evdin as AEY's

14   supplier.

15         And, therefore, I find that the body of the e-mail

16   that is not the statements of the Defendant, which would come

17   in under 801(d)(2)(A), but the response from Evdin and the

18   attachments come in under 801(d)(2)(D), statement by a party's

19   agent during the course and existence of the agency

20   relationship.

21         And this is during the contract for the Afghanistan

22   ammunition to be supplied by AEY through its supplier, Evdin.

23         And that would relate to both 88 and 89.

24         MR. SCHWARTZ:  And, I believe, 109 as well, your

25   Honor.

```
 1              THE COURT:  Well, talk to me about 89.  Oh.  Alex is
 2    who?  This is from AEY, Inc., to Merrill, AEY, David.
 3    "Forward:  Mr. Diveroli.  Backup Ukranian supplier."
 4              MR. SCHWARTZ:  Your Honor, with this, I believe --
 5              THE COURT:  It's just e-mail.
 6              MR. SCHWARTZ:  Right.
 7         I think, your Honor, this would go under the category
 8    we discussed.
 9              If we could go up to the top again, the page -- yeah.
10              The date is April 11th of '07.  So this is -- would go
11    to demonstrate -- and this is an e-mail from a Co-Defendant to
12    Ralph Merrill regarding a forward -- with respect to suppliers
13    for the contract, it would go, as we said before, to -- in that
14    second category of statements of co-conspirators with respect
15    to Merrill's involvement in the performance of the contract
16    prior to the conspiracy period.  So we'd enter this in for
17    nonhearsay purposes to show Merrill's involvement.
18              THE COURT:  And inextricably intertwined?
19              MR. SCHWARTZ:  Correct, your Honor.
20              THE COURT:  Yes, Mr. Stirba.
21              MR. STIRBA:  Your Honor, we didn't raise anything
22    about 89 that I can see.
23              THE COURT:  So you don't have an objection to it?
24              MR. STIRBA:  No.  I think under the Court's prior
25    ruling.  I might disagree with the Court's prior ruling, but
```

 1   you've ruled on that.

 2          THE COURT:  Well, if you want to make an objection,

 3   make it now.

 4          MR. STIRBA:  All right.  I would object, your Honor,

 5   because --

 6          THE COURT:  On what grounds?

 7          MR. STIRBA:  On the grounds that I disagree that it's

 8   appropriate to admit it as co-conspirator/nonhearsay.  That's

 9   my ground.

10          THE COURT:  I'm going to find that it's properly

11   authenticated as it's a forward, which would -- it's a forward

12   of correspondence that is being forwarded by AEY, Inc., to

13   Ralph Merrill and AEY, Inc., David, which has been identified

14   as David Packouz.  And so it's properly authenticated.

15          As it's a forward, I find that it comes in under

16   801(d)(2)(B) as an adoption.  And it's inextricably intertwined

17   on April 11, 2007, regarding the quotes of the amounts of both

18   quantity and price for ammunition and, as an alternative, would

19   not be coming in for the truth of the matter asserted.

20          And 109 was the other one you that raised?

21          MR. SCHWARTZ:  It was 90 and 109, your Honor.

22          THE COURT:  Let's look at 90.  Yes.

23          For 90, same position?

24          MR. SCHWARTZ:  Same position.

25          THE COURT:  Anything further, Mr. Stirba?

```
 1          MR. STIRBA:  No, your Honor.  Thank you.

 2          THE COURT:  On 90, I'm going to find that it's

 3   admissible.  It's properly authenticated pursuant to Rule 901

 4   with the identification of Evdinlimited@gmx.net and to Ralph

 5   Merrill, which has been identified -- I believe it was EM 37 or

 6   38 or 39 that identifies Ralph Merrill's e-mail address with a

 7   "cc" to aeyinc@gmail.com, which has been identified by Packouz

 8   as either belonging to him or later was taken over by Efraim

 9   Diveroli at AEY.  The subject is "The Albanian shipping

10   response."

11          I find that the statements -- the original e-mail,

12   which is from Ralph Merrill, comes in under 801(d)(2)(A) and

13   that the statements by Evdin in the response to Ralph Merrill

14   come in under 801(d)(2)(D), as these are statements by AEY and

15   Ralph Merrill's agent during the course of the existence of the

16   agency relationship regarding shipping and the crates for the

17   shipment of ammunition from Albania to Afghanistan.

18          Let's look at 94 before we go to 109.

19          MR. SCHWARTZ:  Your Honor, with respect to this

20   e-mail, it's authored by Kim Jones from the US Army Sustainment

21   Command.  We won't proceed on this e-mail with this current

22   witness.  We'll wait until Ms. Jones testifies.

23          THE COURT:  Okay.  109.

24          MR. SCHWARTZ:  Based on the dates and that it's from

25   Evdin regarding payments made by Ralph Merrill, I believe it
```

1    falls under the same 801(d)(2)(D) as an agency relationship.

2         THE COURT:  Anything further, Mr. Stirba?

3         MR. STIRBA:  No, your Honor.  I think I've made our

4    position clear.

5         THE COURT:  So I find that it's properly authenticated

6    pursuant to Rule 901.  There's an original e-mail from David

7    Packouz to Henri and Ylli with a "cc" to Ralph Merrill and AEY,

8    Inc.

9         That portion of the e-mail would come in under

10   801(d)(2)(D) and the response from Evdin would also come in

11   under 801(d)(2)(D).

12        127.

13        Is this 127 up here?

14        MR. SCHWARTZ:  Yes, your Honor.

15        Your Honor, we would say this would fall under as

16   being an adoption because in the -- I think in the following

17   e-mail, in EM 128, it's then forwarded by aeyinc@gmail to --

18   it's from Efraim Diveroli to David Packouz and, also, forwarded

19   to Ralph Merrill as well.

20        It's an earlier part of the chain -- it's just an

21   earlier part of an e-mail chain that would be included as an

22   adoption, which I believe is -- if we can go to 129, that would

23   clarify that.

24        If you go on the screen now, your Honor, we have 129,

25   which is --

1          THE COURT:  Let me get it.

2          127 is the first one and then 129?

3          MR. SCHWARTZ:  Well, your Honor, if you look at 129,

4   which is on the screen now, it's the identical e-mail of 127,

5   just forwarded to Ralph Merrill.  So we believe it's just an

6   earlier part of a chain.  It's just to show an adoption.

7          To be honest, your Honor, if 129 has already been

8   admitted and that's not really at issue here, then, we don't

9   really need 127.

10         But we did want to show it for the purpose that it was

11  e-mailed to Ralph Merrill one minute after Efraim Diveroli

12  received that response.  That was our purpose.

13         THE COURT:  Yes.  Mr. Stirba?  127 and 129.

14         MR. STIRBA:  127 is an authentication question with

15  respect to the e-mail.  There's nothing to indicate who Amy

16  Westling is and that she's the purported sender, if that's the

17  representation.

18         With respect to 129, you may forward something and,

19  obviously, the forward is to an e-mail account and to a person

20  that we're familiar with, based upon the evidence.

21         But it still suffers from the same problem.  You're

22  just forwarding an e-mail that has not otherwise been properly

23  authenticated and, therefore, not admissible.

24         THE COURT:  Other than authentication, do you have an

25  objection to it?

1            MR. STIRBA:  You know, it's hearsay in terms of the

2      opinion that is expressed as well, your Honor.

3            THE COURT:  I'm going to find that it's properly

4      authenticated in 129 from aeyinc@gmail.com to Ralph Merrill,

5      both of which have been identified through testimony by David

6      Packouz as to being the e-mail addresses that related to AEY,

7      Inc., either himself or Diveroli, and Ralph Merrill as Ralph

8      Merrill's e-mail, including the admission of the e-mail which

9      directly relates to Ralph Merrill's actual e-mail address and

10      the way that the e-mails are addressed to him at that address,

11      which is Ralph Merrill.

12            This is a forwarded e-mail of a response to Diveroli

13      from Amy P. Westling from the US Department of State to his

14      question.  And as that forward, I find that it is an adoption

15      pursuant to 801(d)(2)(B) and, alternatively, it is not coming

16      in for the truth of the matter asserted, but this is the

17      response that was received from Westling.

18            So it's adopted as being the response that's

19      forwarded.  And it's not coming in for the truth of the matter

20      asserted.

21            Yes.  The next would be -- so, then, you're not going

22      to seek to introduce 127.  Correct?

23            MR. SCHWARTZ:  Well, your Honor, we would like to,

24      just to -- for the sole purpose to show that a minute after the

25      response is received it's sent to Ralph Merrill.

```
 1          And, your Honor, just to point for purposes -- it
 2   wouldn't come in for the truth of the matter asserted itself,
 3   but we think it's properly authenticated based on the case law
 4   that defense counsel has been referring to.
 5          It has the individual -- Amy P. Westling's name in the
 6   "From" category.  There is a signature block listing her full
 7   name and position and a previous chain which shows that she's
 8   responding to a question from Mr. -- actually, I don't think
 9   that actually is included in this one.  But under the case law,
10   we believe that's sufficient to authenticate it.
11          I think defense's arguments with respect to
12   authentication go to weight, not to the admissibility, and that
13   threshold determination.
14          THE COURT:  I'll admit 127, based upon the admission
15   of 128, wherein AEY and Diveroli accepted it as an authentic
16   e-mail and then forwarded it on to Ralph Merrill.  And so it
17   does not come in for the truth of the matter asserted.
18          The next one is 132.
19          MR. SCHWARTZ:  Your Honor, I think the same analysis
20   we went through on the previous chain applies here.  On the
21   bottom half of this e-mail, it's a question from Efraim
22   Diveroli in response to the previous response he received from
23   the Department of State, that he has one more question.
24          On this one, if you go to the top, it's another
25   individual from the Department of State -- well, it's
```

1    Stephen M. Geis and it's listed as "Steve Geis, Response Team."

2          Again, I think within -- within minutes, this is

3    forwarded to Ralph Merrill -- or, in fact, actually, in a

4    response from Efraim Diveroli in the next exhibit, 133, Efraim

5    Diveroli files another response to Stephen Geis's -- asks

6    another question based upon Stephen Geis's response and

7    includes Merrill as a "cc" on this.

8          So we'd go under the same principles as we've

9    discussed before.

10          THE COURT:  Mr. Stirba?

11          MR. STIRBA:  Your Honor, I have nothing further to add

12    to the arguments on 127 and 128 as it would relate to this

13    particular exhibit.

14          THE COURT:  I think we're on 132 and 133.

15          MR. STIRBA:  Right.  I was just referring --

16          THE COURT:  Oh.  You're referring back to the

17    argument.  Okay.

18          MR. STIRBA:  Yeah.  I was saying I made the arguments

19    there that are applicable here.

20          THE COURT:  I understand.  Okay.

21          So 132 and 133 are both admissible.  I find that they

22    are authenticated based upon Diveroli's request to the response

23    team -- or further request to the response team.

24          First, we have the Amy Westling response, which was

25    previously admitted.  This is a chain e-mail.  Then Diveroli

1    writes again to the response team with one more question.  And

2    then the top portion of 132 is the response team's response

3    through Stephen Geis.

4         So 132 would be admissible, and it's not coming --

5    well, the statements by Diveroli would come in as 801(d)(2)(A),

6    and the statements by Geis would not be coming in for the truth

7    of the matter asserted.

8         Is 134 part of this chain?

9         MR. SCHWARTZ:  Yes, your Honor.

10        THE COURT:  So 134 would be the same analysis.  It's a

11   further response by Stephen Geis, not coming in for the truth

12   of the matter asserted.  And the statements by Diveroli would

13   come in under Rule 801(d)(2)(A) and (D) -- actually, it would

14   be (D) for all of these because Diveroli is the agent of

15   Merrill.

16        It would also come in under 801(d)(2)(E) as statements

17   by a conspirator during and in furtherance of the conspiracy.

18   This is the beginning of the exploration of trying to convince,

19   according to the Government's theory, those persons at the

20   Department of State and the US Government to accept the Chinese

21   ammunition in Albania.

22        And that would apply to the other exhibits as well,

23   127 and 132.

24        205.  Oh.  This is the one from the Major.

25        Yes.

1          MR. SCHWARTZ:  Your Honor, we wouldn't be entering

2    this in for the truth of the matter asserted.  Instead, it

3    would go to show David Packouz's knowledge about issues with

4    respect to delivery concerns.

5          THE COURT:  Is he going to be testifying about this?

6    Packouz.

7          MR. TAMEN:  Which number is that?

8          THE COURT:  205.  I don't think it was on your list.

9          MR. TAMEN:  I don't believe he will.

10         THE COURT:  Mr. Stirba?

11         MR. STIRBA:  Yes, your Honor.

12         I would point out, on this one, the evidence will show

13   that Mr. Packouz was no longer employed at AEY on August 28 of

14   2007.

15         Other than that, there's no other witness that I --

16   that's on anybody's witness list that's going to testify at all

17   about this particular exhibit.

18         Plus, I would interpose a relevancy objection, in any

19   event, as to the content of the e-mail.

20         THE COURT:  What is the relevancy of this?

21         MR. SCHWARTZ:  Your Honor, we'll withdraw the exhibit.

22         THE COURT:  Okay.  We have 18 and 125.

23         MR. SCHWARTZ:  Your Honor, I think this -- 18 would go

24   back to -- this is a forward from Efraim Diveroli to Ralph

25   Merrill concerning -- from Ryan Larrison at the US Army.  It

```
 1    references a mistake in the proposal.

 2            Your Honor, this would just -- it wouldn't be entered

 3    for the truth of the matter asserted.  It would go under that

 4    second category, demonstrating communications to show Merrill's

 5    involvement with stages of the solicitation in obtaining the

 6    contract to supply ammunition in Afghanistan.

 7            THE COURT:  Yes, Mr. Stirba.

 8            MR. STIRBA:  Your Honor, this particular document,

 9    given the Court's ruling and what the Court has said about the

10    nature of the --

11            THE COURT:  I can't hear you, sir.

12            MR. STIRBA:  I apologize.

13            Given the Court's ruling of the nature of the

14    foundational requisites that your Honor has already ruled --

15    and I apologize for not speaking into the microphone -- we -- I

16    would have nothing further to advance in terms of our

17    objection.

18            THE COURT:  I'm going to find that EM 25 is properly

19    authenticated.

20            MR. SCHWARTZ:  18, your Honor?

21            THE COURT:  I'm sorry.  I'm looking at 25.

22            18 has been properly authenticated through e-mails,

23    evidence in the record and testimony as to aeyinc@gmail.com,

24    the testimony of Packouz as to who that e-mail address belonged

25    to and Ralph Merrill through the admission of e-mail -- I
```

1    believe it's 37 -- as well as the testimony of Packouz as to

2    his e-mail identification and the body of this e-mail.

3           This is a forwarded letter concerning the

4    solicitation.  It's not coming in for the truth of the matter

5    asserted.

6           Okay.  It's 125, last one.

7           MR. SCHWARTZ:  Your Honor, this e-mail is a

8    back-and-forth between Efraim Diveroli, Kim Jones, a Brett

9    Luchsinger and David Packouz with respect to certificates of

10   conformance.

11          We think this would -- would come in just to -- first

12   of all, the statements of Packouz and Efraim Diveroli would

13   come in as co-conspirators' statements.

14          The discussion we think will properly -- will -- if

15   the Court would like, we could reserve to rule on this prior

16   to -- once Mr. Tamen asks David Packouz about this

17   correspondence, it will maybe become more clear of the

18   admission of this either as -- as nonhearsay and just go to the

19   knowledge of the co-conspirators and perhaps an adoption.

20          THE COURT:  This is an area that's going to be gone

21   into with Mr. Packouz?

22          MR. SCHWARTZ:  Yes, your Honor.  This relates to

23   certificates of conformance.

24          THE COURT:  All right.  So I'll reserve on that.

25          Those are the remaining e-mails that I have from

1    Mr. Stirba's e-mail.

2              Is that correct, Mr. Stirba?

3              MR. STIRBA:  Yes, your Honor.  Thank you.

4              THE COURT:  I am going to continue to just review

5    every e-mail on Sunday.

6              For those of you observing the holiday, have an easy

7    fast.  I'll see you Tuesday morning, 9:00.  We're in recess.

8              MR. STIRBA:  Thank you, your Honor.

9              MR. SCHWARTZ:  Thank you, your Honor.  You, too.

10             Your Honor, one quick question with respect to the

11   scheduling.

12             I know that you mentioned -- I think it was on

13   Wednesday -- about possibly holding a *Daubert* hearing next

14   week.

15             THE COURT:  Oh, yes.

16             MR. SCHWARTZ:  We have to -- we're anticipating flying

17   in our expert, Dr. Chueng, from California.  But just to get an

18   idea of when --

19             THE COURT:  Well, we can do it Wednesday or Thursday.

20   I have -- Thursday I need to break by around 12:00 and

21   Wednesday I need to break by 1:00.

22             MR. SCHWARTZ:  Wednesday would be the preference of

23   the Government, your Honor.

24             THE COURT:  How is Wednesday for you and your expert

25   or experts?

1         MR. STIRBA:  I cannot address that precisely.

2         One is obviously located here, but one is up in DC, if

3    we're talking about the Chinese experts.  I haven't checked

4    with the fellow in DC yet because I didn't know precisely when

5    this was going to be.

6         But, in any event, if that's what we have to do, we'll

7    plan on it, unless there's some huge problem.  And I'll let the

8    Court know.

9         THE COURT:  So we'll plan on, then, Wednesday morning

10   for the *Daubert* hearing, at least of Chueng.

11        MR. SCHWARTZ:  Yes, your Honor.

12        THE COURT:  And possibly Dreyer and -- how does he

13   pronounce his name?

14        MR. CRANE:  "Takcik."

15        THE COURT:  "Takcik."

16        MR. CRANE:  "Takcik."  Yes.

17        THE COURT:  So the "k" is silent.

18        MR. CRANE:  Yes.

19        THE COURT:  Okay.  I wasn't sure which was silent.  I

20   knew something had to be silent there, but I wasn't sure which

21   one.

22        Okay.  Thank you.  We're in recess.

23        MR. SCHWARTZ:  Thank you, your Honor.

24        MR. STIRBA:  Thank you.

25        (End of requested excerpt.)

```
 1

 2                      C E R T I F I C A T E

 3

 4        I hereby certify that the foregoing is an accurate

 5   transcription of the proceedings in the above-entitled matter.

 6

 7

 8   _____        /s/Lisa Edwards
          DATE               LISA EDWARDS, CRR, RMR
 9                           Official United States Court Reporter
                             400 North Miami Avenue, Twelfth Floor
10                           Miami, Florida 33128
                             (305) 523-5499
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```