# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 08-20574-CR-LENARD/TURNOFF

**UNITED STATES OF AMERICA**,

v.

**RALPH MERRILL,**

Defendant.

_____/

## AMENDED OMNIBUS ORDER GRANTING IN PART AND DENYING IN PART GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE DEFENSE EXPERTS AND REQUEST FOR *DAUBERT* HEARING (D.E. 667) AND DENYING DEFENDANT MERRILL'S MOTION *IN LIMINE* REGARDING POWERPOINT PRESENTATION (D.E. 818)

**THIS CAUSE** is before the Court on the Government's Motion *in Limine* to Exclude

Defense Experts and Request for *Daubert* Hearing ("Motion," D.E. 667), filed on March 15,

2010. On April 8, 2010, Defendant Ralph Merrill ("Merrill") filed his response in opposition

("Response," D.E. 688), to which the Government filed its reply ("Reply," D.E. 695) on

April 22, 2010. On September 22, 2010, the Court heard argument and the testimony of the

Government's expert Dr. Tai Ming Cheung,[1] and Merrill's experts Dr. June Teufel Dreyer

_____

[1]     Dr. Cheung's testimony mostly concerned Defendant Merrill's Motion *in Limine* to Exclude Government Expert Dr. Cheung's Power Point Presentation from Being Presented to the Jury and to Limit Testimony of Dr. Cheung to Areas Where He Is Competent (D.E. 818), filed on September 13, 2010. Based upon Cheung's testimony and the Government's stipulation that it would only use the slides and photographs identified as Slide Nos. 5, 6, 8-12, of Cheung's powerpoint presentation (D.E. 818-1.), and only as demonstrative exhibits, the Court denied Merrill's motion. The Court further found that Cheung was qualified to testify regarding his opinions on the codification of the status quo under Chinese law and whether the ammunition at issue in this case came from a Communist Chinese military company, as defined by the Defense

and John J. Tkacik, Jr.  Having considered the Motion, Response, Reply, related pleadings, and the record, the Court finds as follows.

### I.      Procedural Background

On November 16, 2009, the Government filed its Notice of Expert Witness (D.E. 440), indicating it intends to call Dr. Tai Ming Cheung ("Cheung"), an expert witness who will testify that the ammunition at issue in this case was manufactured by a Communist Chinese military company and will testify regarding the historical relationship between Albania and the People's Republic of China ("PRC") and the history of U.S. trade sanctions against the PRC.  The Government also indicated that it might call an expert from either the U.S. Army National Ground Intelligence Center or the U.S. Army Investigation Laboratory to testify that the majority of the ammunition the Department of Defense ("DoD") received from AEY, Inc. was manufactured in China.  Merrill filed a motion *in limine* to exclude Dr. Cheung's testimony on the grounds that his testimony would not assist the jury.  (See D.E. 500.)[2]  That motion was denied on February 10, 2010.  (See D.E. 605.)  In the February 10, 2010, Order, the Court found Cheung's testimony was admissible under Rules 401, 403, and 702 of the Federal Rules of Evidence but expressly limited Cheung's testimony regarding the

---

Federal Acquisition Regulation Supplement and interpreted by this Court's prior orders.  As such, for the reasons stated in open court on September 22, 2010, Defendant Merrill's Motion *in Limine* to Exclude Government Expert Dr. Cheung's Power Point Presentation from Being Presented to the Jury and to Limit Testimony of Dr. Cheung to Areas Where He Is Competent (D.E. 818) is **DENIED**.

[2]      The Government's response is found at D.E. 526, and Merrill's reply at D.E. 543.

history of U.S. trade sanctions against the PRC.

On February 16, 2010, the Parties appeared before the Court for a status conference. During the status conference, Merrill agreed to provide notice to the Government of experts it intended to call pursuant to Rule 16 of the Federal Rules of Criminal Procedure.  (See D.E. 748 at 52-53; Tr. of Feb. 16, 2010, Status Conference.)[3]

On February 19, 2010, Merrill filed his first Notice of Expert Witnesses (D.E. 629). Merrill's Notice indicates he intends to call Lester W. Roane ("Roane") to testify that the ammunition in question was safe, operable, and performed according to nationally and internationally recognized standards.   Roane would also testify about ammunition identification, head stamps, and "the manufacture of ammunition by different companies and countries."  (Id.)  Merrill offers Roane as qualified based upon his years of training and experience in the field of ballistic testing and his analysis of the ammunition at issue in this case.

Merrill also placed the Government on notice that he intends to call either Derk G. Rasmussen ("Rasmussen") or Daniel T. Rondeau ("Rondeau") as accounting experts.[4] Merrill offers their testimony regarding "the cash flows to and from AEY, Inc's and Merrill's various bank accounts," AEY's profits, the roles of the various parties in financing the

---

[3]    Not only did counsel not object to the Court's direction to provide notice of its experts or ask that the notice be submitted in camera, (D.E. 657 at 33, Tr. of Feb. 23, 2010, Status Conference), he stated he would be "happy to do it."  (D.E. 748 at 52, Tr. of Feb. 16, 2010, Status Conference.)

[4]    Merrill indicates that either Rasmussen or Rondeau will testify, but not both.

contract at issue to provide non-standard ammunition for Afghanistan (the "contract"), and an explanation of "the factoring process." (Id.)  Rasmussen and Rondeau's testimony is based upon their review and analysis of documents in this case including bank records, invoices, receiving reports, certificates of conformance, summary schedules, contracts, and e-mail correspondence.

Merrill next placed the Government on notice that he intends to call Dr. June Teufel Dreyer ("Dreyer") and "a second unnamed witness" to testify regarding the history of Communist Chinese military companies, the Sino-Soviet conflict, China's relationship with Albania, and the historical relationship between the two militaries.  Dreyer's testimony is based upon her years of training and experience, her work and research of the PRC, and her role as the Commissioner to the United States-China Economic and Security Review Commission.

Finally, Merrill indicated he intends to call Dr. Noel C. Gardner ("Gardner") to testify regarding certain psychiatric disorders, including bi-polar disorder, attention deficit hyperactivity disorder ("ADHD"), polysubstance dependence, and eating disorders, as well as the effects of certain medications and drugs such as Seroquel, Strattera, Pristiq, Abilify, Trezadone, Adderal, Ceristol, Cymbalta, Allia, cocaine, and marijuana on one's ability to perceive and/or recall.[5]

---

[5]      Gardner's testimony was offered as relevant to the credibility of one of the Government's potential witnesses, Merrill's co-defendant and the president of AEY, Efraim Diveroli ("Diveroli").  On September 13, 2010, the Government filed a Notice of Compliance with Magistrate Judge Turnoff's Order (D.E. 825) indicating the Government is not going to call

That same day, on February 19, 2010, the Government moved to strike Merrill's initial expert notice on the grounds that Merrill failed to provide adequate notice of the experts' opinions or bases for such opinions.  (See D.E. 633.)  Merrill filed a Supplemental Notice of Expert Witness (D.E. 644) on February 23, 2010, giving notice that he also intends to call John J. Tkacik, Jr. ("Tkacik") as an expert regarding the history of Communist Chinese military companies, interaction between Albania's and the PRC's militaries, and Albania's efforts to join NATO and U.S. involvement in those efforts.  Merrill offers that Tkacik will testify that "during the reign of Chairman Mao Zedong there were no Communist Chinese military companies in China and no entities separate and apart from the sovereign government."  (Id. at 2.)

On February 23, 2010, the Parties again appeared before the Court for a status conference.  Based upon the Court's continuance of the trial, the Court denied the Government's motion to strike.  (See D.E. 657 at 38.)  On March 2, 2010, the Government moved to compel expert witness summaries from Merrill in accordance with Rule 16 of the Federal Rules of Criminal Procedure.  (See D.E. 653.)[6]  On July 2, 2010, the matter was referred to Magistrate Judge William C. Turnoff.  (See D.E. 711.)  After a hearing on July 13, 2010, the Magistrate Judge granted the Government's motion to compel and ordered Merrill to supplement his expert disclosures and/or file a pleading demonstrating compliance

---

Diveroli as part of its case-in-chief.  Accordingly, the portion of the Government's Motion pertaining to Dr. Gardner is now moot.

[6]    Merrill's response can be found at D.E. 670, and the Government's reply at 677.

with Rule 16.  (<u>See</u> D.E. 714, 726.)

On July 21, 2010, Merrill filed his second Notice (D.E. 727) again listing Roane, Rasmussen, Rondeau, Dreyer, and Tkacik as expert witnesses.  Merrill's second notice mimics the prior Notice with minor additions.  For example, Merrill adds that Roane "determined that the ammunition was safe, operable, and performed according to nationally and internationally recognized standards by test firing the ammunition," and he will testify "that the ammunition properly fits into and can be fired from an AK-47 rifle."  (<u>Id.</u> at 1-2.) Merrill offers that "Roane also observed that the ammunition was in pristine condition " and "free from any deterioration."  (<u>Id.</u> at 2.)  He also adds that Roane will testify that the majority of the ammunition at issue was manufactured in the PRC and "he works at H.P. White Laboratory, Inc., a nationally accredited laboratory for ballistic testing."  (<u>Id.</u>)  As to Merrill's proposed accounting experts, Rasmussen and Rondeau, he adds they are forensic accountants who will explain what financing Merrill provided (as the Indictment indicates Merrill financed the contract at issue), the factoring process AEY used with Wells Fargo bank to fund the contract, and this testimony "will assist the trier of fact in understanding the complex intricacies of corporate accounting."  (<u>Id.</u> at 3.)  As to Merrill's military history experts, Merrill adds that Dreyer will testify "that the ammunition at issue in this case was not acquired from a Communist Chinese military company because at the time this ammunition was manufactured there were no Communist Chinese military companies within" the PRC.  (<u>Id.</u>)  Merrill does not add any information regarding Tkacik's proposed

testimony.

## II.    Government's Motion *in Limine*

The Government moves to exclude Merrill's proposed experts as insufficient under Rule 702 of the Federal Rules of Evidence.[7]  Specifically, the Government challenges the relevance and reliability of each of the proposed witness's testimony.[8]

The Government contends that Roane's testimony that the ammunition in question was safe, operable, and performed according to standards is irrelevant to whether Merrill committed fraud by concealing the origin of the ammunition.  The Government also questions the reliability of his testimony based on the fact that they have not received any testing results or anything that forms the basis for his opinions.

As to Dreyer's and Tkacik's proposed testimony, the Government expresses concern that the experts will offer impermissible testimony as to their own interpretations of the Defense Federal Acquisition Regulation Supplement ("DFARS") provisions involved in this case and will impermissibly testify regarding the legal meaning of the term "Communist

---

[7]       The Government also moves to exclude Merrill's proposed experts based on his failure to comply with Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure.  The Court notes that both the Government's Motion and its Reply were filed before the Magistrate Judge's ruling as to the Government's motion to compel better expert witness summaries.  As part of the Magistrate Judge's ruling, Merrill was directed to provide any expert reports in his possession and supplement his disclosures or at least certify compliance with Rule 16's requirements. (See D.E. 726.)  As a result, the Court is only concerned with the admissibility of Merrill's proposed experts under the Federal Rules of Evidence and Daubert.

[8]       The Government does not appear to challenge the qualifications of Merrill's proposed experts.

7

Chinese military company."  The Government believes Dreyer and Tkacik will testify regarding their opinions as to the reasonableness of the DFARS prohibition and whether the definition of the term "Communist Chinese military company" should be that used in the Strom Thurmond Act rather than that used in the DFARS.  (See D.E. 254 at 8-9.)  The Government also believes any testimony about Albania's efforts to join NATO and the U.S. government's involvement is irrelevant.  Finally, the Government contends Dreyer's and Tkacik's testimony is cumulative to Cheung's testimony and perhaps a stipulation is more appropriate.

As to Merrill's accounting experts, the Government questions the relevance of their testimony in light of the fact that it intends to stipulate that the Department of the Army paid the defendants the amounts referenced in the Amended Superseding Indictment ("Indictment," D.E. 492–1.).[9]  The Government is concerned Merrill intends to introduce their testimony in order to show he did not derive much financial benefit from the contract. The Government also argues the testimony is misleading and confusing, and more appropriately the subject of lay witness testimony.

In response, Merrill argues the proposed expert testimony is reliable and relevant. Merrill argues Roane's testimony is reliable as it is based upon his testing of the ammunition and his familiarity with the ammunition and its origin based on years of experience in

_____

[9]      On December 14, 2009, the Government amended the superseding indictment (D.E. 82), after obtaining leave from the Court to correct a scrivener's error.  (See D.E. 475, 492-1.)

8

ballistics testing.  He argues Roane's testimony as to the condition of the ammunition is relevant based on the fact that the "specter of corroded, unserviceable and dangerous ammunition looms over this case."  He also argues Roane's testimony regarding the identification of ammunition is relevant to whether the Chinese origin of the ammunition could have been concealed, when the ammunition was manufactured, and by whom.

As to Dreyer and Tkacik, Merrill argues the reliability of their testimony is based on "reason and experience" and the crux of their testimony is that the ammunition at issue in this case was not acquired from a Communist Chinese military company because at the time of the acquisition there were no Communist Chinese military companies.  (Response at 7.)  The premise of Merrill's argument is the following.  In order to convict Merrill of concealing the Chinese origin of the ammunition in violation of the DFARS prohibition contained in the contract,[10] the Government must prove that the ammunition was acquired from a Communist

---

[10]     The prohibition incorporated into the contract through DFARS § 252.225-7007, provides as follows:

**DFARS § 252.225-7007  Prohibition on Acquisition of United States Munitions List Items from Communist Chinese Military Companies.**

As prescribed in 225.1103(4), use the following clause:

PROHIBITION ON ACQUISITION OF UNITED STATES MUNITIONS LIST ITEMS FROM COMMUNIST CHINESE MILITARY COMPANIES (SEP 2006)

(a)  Definitions.  As used in this clause—

"Communist Chinese military company" means any entity that is—

(1)  A part of the commercial or defense industrial base of the People's Republic of China; or

Chinese military company.  Merrill argues this means the Government must prove the ammunition came from an entity separate and distinct from the government of the PRC. Presumably, Dreyer and Tkacik will testify that no entities separate and apart from the PRC's government existed during the reign of Chairman Mao Zedong, when the ammunition at issue was manufactured, and thus Merrill could not have violated the law.  As to Tkacik's testimony regarding Albania's efforts to join NATO, Merrill argues this area of testimony is relevant to show the United States government turned a blind eye towards allegations that Albanians were receiving bribes, that Albanians derived financial gain from their sale of otherwise surplus ammunition, and all of this supports the inference of a motive for U.S. government officials to authorize the use of Chinese ammunition in order to maintain positive relationships with their Albanian counterparts.  Finally, Merrill contends their testimony is admissible even if duplicative of Cheung's testimony as there may be distinct nuances to their testimony.

With regard to the proposed accounting experts, Merrill argues their testimony is reliable because it is based upon their review of financial documents produced by the Government in this case and is relevant in that it will assist the jury understand Merrill's role in the contract, "how his money was used, and any return on his investment."  (Id. at 14.) Merrill argues this testimony is necessary to rebut the Government's portrayal of him as obsessively motivated by the "bottom line."  He also argues that specialized knowledge is

---

(2)  Owned or controlled by, or affiliated with, an element of the Government or armed forces of the People's Republic of China.

necessary to help the jury understand "the intricacies of corporate accounting, including factoring, and trace substantial flows of money that took place in connection with this contract." (Id.)

In reply, the Government argues that since the applicable regulations, contract, and the Indictment all apply the definition of Communist Chinese military company contained in the DFARS rather than that used in the Strom Thurmond Act, any expert testimony regarding the latter would be irrelevant and confusing.  The Government further contends there is no meaningful conflict between the two definitions in any event.  Additionally, the Government argues that even if the definitions contained in the DFARS and the Strom Thurmond Act were different, the DFARS definition was expressly incorporated into the contract at issue in the Indictment and the DoD could have included a narrower or more expansive definition if it so desired.  Next, the Government contends the jury does not need to learn about forensic accounting in order to determine whether Merrill committed fraud against the United States.  According to the Government, the defendants did not perpetrate the fraud by conducting complex financial transactions and the only substantial flow of money referenced in the Indictment is the amount of payment provided to the defendants for the ammunition under the contract.  The Government is willing to stipulate as to those facts. The Government's main concern is that Merrill offers the proposed accounting testimony to advance a jury nullification argument based upon how much money Merrill spent or received in connection with the contract.  As a result, the Government seeks to exclude all of Merrill's

proposed expert witnesses.

### III.    Standard of Review

Rule 702 of the Federal Rules of Evidence, which controls the admission of expert

witness testimony, provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of
> fact to understand the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training, or education,
> may testify thereto in the form of an opinion or otherwise, if (1) the testimony
> is based upon sufficient facts or data, (2) the testimony is the product of
> reliable principles and methods, and (3) the witness has applied the principles
> and methods reliably to the facts of the case.

FED. R. EVID. 702 (2000).  The Supreme Court has stated that "[t]he inquiry envisioned by

Rule 702 is . . . a flexible one."  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579,

594 (1993).  "Many factors will bear on the inquiry," and no "definitive checklist or test"

exists.  Id. at 593.  The Supreme Court in Daubert set forth a non-exclusive checklist for trial

courts to use in assessing the reliability of scientific expert testimony.  The Daubert factors

include: (1) whether the expert's technique or theory can be or has been tested—that is,

whether the expert's theory can be challenged in some objective sense, or whether it is

instead simply a subjective, conclusory approach that cannot reasonably be assessed for

reliability; (2) whether the technique or theory has been subject to peer review and

publication; (3) the known or potential rate of error of the technique or theory when applied;

(4) the existence and maintenance of standards and controls; and (5) whether the technique

or theory has been generally accepted in the scientific community.  Daubert, 509 U.S. at 593-

94.

In the Eleventh Circuit, the proponent of expert testimony must show that: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." <u>Rink v. Cheminova, Inc.</u>, 400 F.3d 1286, 1291-92 (11th Cir. 2005); <u>United States v. Frazier</u>, 387 F.3d 1244, 1260-63 (11th Cir. 2004) (en banc); <u>City of Tuscaloosa v. Harcros Chems., Inc.</u>, 158 F.3d 548, 562-63 (11th Cir. 1998) (citing <u>Daubert</u>, 509 U.S. at 589).  The burden of laying the proper foundation for expert testimony rests on the party offering the expert, and admissibility must be shown by a preponderance of the evidence.  <u>Allison v. McGhan Med. Corp.</u>, 184 F.3d 1300, 1306 (11th Cir. 1999).

In addition to the <u>Daubert</u> analysis, the Court must apply all of the Federal Rules of Evidence, including 402 and 403, to expert testimony.  <u>Allison</u>, 184 F.3d at 1309.  "The judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value."  <u>Id.</u> at 1311-12.  Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Only

relevant evidence is admissible under Rule 402.  Finally, pursuant to Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

## IV.   Discussion

### A.   Ammunition Expert

Based upon the evidence and testimony proffered thus far, the Court finds Roane's proposed testimony as to the condition of the ammunition is inadmissible under Rule 702 as it fails to assist the jury, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.  Whether or not the ammunition Roane tested was safe, operable, fits properly into an AK-47 rifle, was in pristine condition, etc., is irrelevant to the facts at issue at trial and does not help the jury understand the evidence.  Merrill is charged with concealing and misrepresenting the fact that the ultimate source of munitions they delivered to the DoD was a Communist Chinese military company in violation of the DFARS rule incorporated into the contract.  This case does not involve a civil action for breach of contract or non-conforming goods.  Thus, Roane's proposed testimony that: (1) the ammunition in question was safe, operable, and performed according to nationally and internationally recognized standards; (2) the ammunition properly fits into and can be fired from an AK-47 rifle; (3) the ammunition performed as designed

without any observable or measurable defects when fired; and (4) he observed that the ammunition was in pristine condition and free from deterioration, is irrelevant and inadmissible.[11] Thus, it is also properly excluded under Rules 401 and 403.  The Court also notes that there is no basis for determining the reliability or methodology of Roane's findings as Roane does not provide an expert report or otherwise indicate how he reached any of his conclusions.

Additionally, it appears the rest of Roane's proposed testimony is cumulative to any testimony by Cheung.  Merrill proffers that Roane will testify that the majority of the ammunition in this case was manufactured in the PRC.  Presumably, Cheung will testify similarly.  Thus, a stipulation may be more appropriate than having two different expert witnesses testify as to this fact.  However, if a contested issue at trial is whether or not the ammunition at issue in this case was manufactured in China, Roane's testimony could assist the jury determine a fact at issue and understand the evidence.  Unless otherwise stipulated to, Roane's testimony may be relevant to whether the ammunition at issue in this case was manufactured by a prohibited source.  Otherwise, Roane's proposed testimony concerning ammunition identification, head stamps, and the manufacture of ammunition by different companies and countries is irrelevant.

### B.    Accounting Experts

---

[11]    In response to the Court's inquiry in open court on September 14, 2010, the Government indicated it does not intend to raise as an issue at trial whether the ammunition was safe, operable, or in working condition.

Based upon the evidence and testimony proffered thus far, the Court finds the proposed testimony of Merrill's accounting experts should be excluded under Rule 702 as it fails to assist the jury, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.  Testimony by Rasmussen or Rondeau as to the flow of money between Merrill, AEY, the Government, and other entities is irrelevant to any issue at trial.  Also irrelevant is how AEY used the money it received.  Moreover, the jury does not need to understand the "complex intricacies of corporate accounting," "factoring," "tracing," or any other accounting principles.  This case does not involve accounting fraud or any facts for which such testimony might be useful to the jury.  Rather, their testimony would only serve to confuse and mislead the jury.  Additionally, the Government is willing to stipulate to the facts surrounding the government's payments to AEY.  Furthermore, testimony regarding the extent of Merrill's investments or profits would not assist the jury determine any issue or understand the evidence at trial.  It also carries with it the danger of unfair prejudice to the government and only supports a jury nullification argument.  Finally, although Merrill argues this testimony is necessary because the Indictment alleges Merrill financed the Afghanistan contract, closer inspection reveals this argument is without merit.  Merrill bases this argument on one paragraph of the Indictment.  Paragraph 5 of the Indictment identifies Ralph Merrill and simply states he "was a business associate of EFRAIM DIVEROLI, who provided financial and managerial assistance to AEY." (D.E. 492-1 at ¶ 5.)  The Indictment does not allege any

accounting fraud or that Merrill improperly financed the contract.  See United States v. Petrie, 302 F.3d 1280, 1286-87 (11th Cir. 2002).  Thus, expert testimony is not needed to assist the jury understand the charges brought against Merrill in the Indictment or the extent of Merrill's role with the contract.  Expert testimony is also not necessary for Merrill to present evidence that he was not heavily invested in the success of the Afghanistan contract should the Government make this an issue at trial.  In the end, Merrill's proposed accounting experts do not assist the jury understand the evidence or determine a fact at trial.  Their testimony is irrelevant and risks confusing and misleading the jury.  As such, it should be excluded under Rules 401, 403, and 702.

### C.   Communist Chinese Military Company Experts

Finally, the Court finds the majority of Dreyer's and Tkacik's proposed testimony is inadmissible under Rule 702 as it fails to assist the jury, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. To the extent it is not needlessly cumulative to Cheung's testimony, Merrill may present Dreyer or Tkacik to testify regarding China's relationship with Albania and the historical relationship between their militaries, including friendly military transfers between the two countries.  This testimony may be relevant to whether the ammunition at issue was manufactured by a Communist Chinese military company in violation of the DFARS prohibition contained in the contract.  Nevertheless, these experts are not permitted to testify regarding their interpretation of the DFARS provisions or the various definitions of

Communist Chinese military companies.  Dreyer and Tkacick are also not permitted to testify

that the ammunition at issue in this case was not acquired from a Communist Chinese

military company because no such entities existed at the time of the ammunition's

manufacture.  Merrill cannot rehash an argument this Court has already considered and

rejected through the guise of expert testimony.

The Strom Thurmond National Defense Authorization Act's definition section

referenced in § 1211(d)(1) provides:

> (b)    Determination and reporting of Communist Chinese military companies
> operating in United States.
> (1)    Initial determination and reporting. Not later than March 1, 2001,
> the Secretary of Defense shall make a determination of those persons operating
> directly or indirectly in the United States or any of its territories and
> possessions that are Communist Chinese military companies and shall submit
> a list of those persons in classified and unclassified form. . . .:
> (2)    Annual revisions to the list. The Secretary of Defense shall make
> additions or deletions to the list submitted under paragraph (1) on an annual
> basis based on the latest information available and shall submit the updated list
> not later than February 1, each year to the committees and officers specified
> in paragraph (1). . . .
> (4)    Communist Chinese military company. For purposes of making
> the determination required by paragraph (1) and of carrying out paragraph (2),
> the term "Communist Chinese military company" means -
> (A)    any person identified in the Defense Intelligence Agency
> publication numbered VP-1920-271-90, dated September 1990, or
> PC-1921-57-95, dated October 1995, and any update of those publications for
> the purposes of this section; and
> (B)    any other person that -
> (i)    is owned or controlled by, or affiliated with, the
> People's Liberation Army or a ministry of the government of the People's
> Republic of China or that is owned or controlled by an entity affiliated with the
> defense industrial base of the People's Republic of China; and
> (ii)    is engaged in providing commercial services,
> manufacturing, producing, or exporting.

18

50 U.S.C. § 1701 note,  Pub. L. 105-261, 112 Stat. 2160 (Oct. 17, 1998), <u>amended by</u> Pub. L. 106-398, 114 Stat. 1654 (Oct. 30, 2000) and Pub. L. 108-375, 118 Stat. 2089 (Oct. 28, 2004).

In order to implement § 1211 of the National Defense Authorization Act for Fiscal Year 2006, excerpted above, the DoD issued an interim rule amending the Defense Federal Acquisition Regulation Supplement (DFARS) effective September 8, 2006. 71 Fed Reg. 53046 (the "DFARS rule").  Because those responsible for implementing the DFARS rule were not aware of any continually updated "real-time" information pursuant to section 4(A) above, they decided to use a "simplified version" of the term "Communist Chinese military company" that paralleled the definition in section 4(B). (See D.E. 667-1 at 2.)  There is no reason for Merrill's experts to testify regarding the definition contained in the Strom Thurmond Act.  The relevant definition of "Communist Chinese military company," is that provided in the DFARS provision incorporated into the contract at issue, 48 C.F.R. § 252.225-7007.  That provision defines a "Communist Chinese military company as "any entity that is - (1) A part of the commercial or defense industrial base of the People's Republic of China; or (2) Owned or controlled by, or affiliated with, an element of the Government or armed forces of the People's Republic of China."  Merrill seeks to present Dreyer's and Tkacik's testimony that during the time the ammunition was manufactured, there were no entities separate and apart from the PRC's communist government.  In essence, Merrill's argument is that (1) the PRC's communist government owned and controlled

everything during the time the ammunition was manufactured; (2) therefore no separate entities existed apart from the PRC; (3) as a result, because an "entity" cannot be owned, controlled, or affiliated with itself, there could not have been any violation of the DFARS provisions or the contract. Merrill previously raised this argument as part of his motion to exclude Cheung's testimony. (See D.E. 500, 605.)

The Court finds impermissible Dreyer's and Tkacik's testimony regarding whether the ammunition at issue in this case was produced by a "Communist Chinese military company" as it conflicts with that term's definition in the DFARS and as interpreted in this Court's orders. As an initial matter, the Court notes that Dreyer's and Tkacik's testimony is consistent with Cheung's testimony. The only difference is that they attempt to use their own definitions of a "Communist Chinese military company" and "entity" that are different from that provided in the DFARS. Both Dreyer and Tkacik testified that ammunition manufactured during the relevant time period (from approximately 1964 to 1971) was manufactured by factories owned and controlled by the Chinese government. Tkacik testified that all ammunition manufactured in the PRC during this time period was exclusively produced by units of the People's Liberation Army ("PLA"). The DFARS provision defines a "Communist Chinese military company" as "any entity that is - (1) A part of the commercial or defense industrial base of the People's Republic of China; or (2) Owned or controlled by, or affiliated with, an element of the Government or armed forces of the People's Republic of China." Black's Law Dictionary defines "entity" as "[a]n organization

(such as a business or a governmental unit) that has a legal identity apart from its members." BLACK'S LAW DICTIONARY (8th ed. 2004). Thus, pursuant to the DFARS definition, a governmental unit can constitute a part of the commercial or defense industrial base of the PRC or be owned, controlled by, or affiliated with the Chinese government or its armed forces. Dreyer's or Tkacik's testimony to the contrary would confuse, not assist, the jury. It also conflicts with the Court's rulings and the DFARS definition expressly incorporated in the contract. Had Merrill's expert testimony been based upon the application of the DFARS definition of a "Communist Chinese military company" (both its plain language and as interpreted by this Court's orders), their testimony would have been admissible. The problem is Merrill's experts attempted to provide opinions based on their own unreasonable constructions of the DFARS definition and words contained therein such as "entity" (for example, as constituting only "commercial" entities) and company (for example, as constituting only private commercial enterprises), in contravention of the DFARS definition. As stated at the September 22, 2010, hearing, to the extent Merrill wishes to present Dreyer's or Tkacik's testimony that during the time period of the production of the ammunition at issue in this case, ammunition was produced by units of the PLA or any entities producing ammunition were part of the PRC, Merrill may do so. Nevertheless, Dreyer's and Tkacik's testimony relating to their definitions or interpretations of a "Communist Chinese military company" or "entity" is not admissible.

Additionally, Dreyer's proposed testimony regarding the Sino-Soviet conflict fails to

assist the jury as it is irrelevant.  Similarly, Tkacick is not permitted to testify regarding Albanian's efforts to join NATO and the U.S. government's involvement and assistance with these efforts.  As with the Court's prior rulings as to Merrill's suggestions or inferences of bribery and kickbacks, Merrill's speculation and innuendo that the U.S. government may have been more willing to authorize AEY's shipment of Chinese ammunition because of its desire to help Albania join NATO is completely unsubstantiated and unfairly prejudicial. The testimony would not assist the jury and would only serve to confuse and mislead the jury.

### V.     Conclusion

The Court finds that the majority of Merrill's proposed expert testimony should be excluded under Rules 401, 403, 702, and <u>Daubert</u>.  To the extent Merrill wishes to offer expert testimony within the guidelines established above, such testimony is still subject to the requirements that the witness must be qualified and have used reliable methodology in reaching their conclusions.  Accordingly, it is **ORDERED AND ADJUDGED** that the Government's Motion *in Limine* to Exclude Defense Experts and Request for *Daubert* Hearing (D.E. 667) is **GRANTED IN PART and DENIED IN PART**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of October, 2010.

*Joan A. Lenard*

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**